**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Malcolm S. McLEOD and Eunice McLeod, his wife,**
**Defendants-Appellants.**

**Nos. 83–3534, 83–3670.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1983.

Decided Dec. 2, 1983.

Chris Pickrell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Donald A. McLeod, Seattle, Wash., for defendants-appellants.

Before WRIGHT, PREGERSON, and FERGUSON, Circuit Judges.

PREGERSON, Circuit Judge:

The district court held that appellant McLeod's[1] conduct constituted a common law conversion under Washington state law and a violation of the civil portion of the False Claims Act, 31 U.S.C.A. § 3729 (1983). The judgment entered against McLeod included an award of prejudgment interest. McLeod seeks reversal of the court's finding that he knowingly made false claims against the United States. In addition, McLeod seeks reversal of the court's rulings applying a six-year statute of limitations and denying his motion to implead Christian Palzer. Finally, he seeks reversal of the court's award of prejudgment interest. The United States seeks reversal of the court's refusal to award double damages under the False Claims Act.

FACTS

In 1952, The Bureau of Indian Affairs (BIA) contracted with Rayonier, Inc. (Rayonier) to cut and log various timber parcels within the Quinault Indian Reservation in the State of Washington. Under the contract, the BIA would receive the timber sale proceeds and then distribute the funds to the owners of the various parcels.

This case involves a 40-acre timber parcel acquired by McLeod in 1959. In April 1973, he sold his interest in the parcel to Christian Palzer. In 1977, the BIA mistakenly

---

1. For convenience, we refer to both appellants as McLeod.

issued McLeod three checks, which he cashed, representing timber proceeds from the 40-acre parcel. Early in 1978, Palzer presented his deed to the property to the BIA and demanded the timber proceeds. After McLeod repeatedly refused to return the money to the BIA, the Department of Interior paid Palzer $55,425.80.

In February 1981, the government filed a complaint in the District Court for the Western District of Washington alleging that McLeod converted federal funds and was liable for civil violations under the False Claims Act. Following a bench trial, the district court ordered judgment against McLeod on both counts. The court awarded $55,425.80 under Count I for conversion and three $2,000 penalties under Count II for the False Claims Act violations. In addition, the court awarded $33,916.02 as prejudgment interest. The district court refused to award double damages under the Act.

ANALYSIS

I. *False Claims Act*

■ The civil portion of the False Claims Act reads as follows:

> A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person—
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval
>
> . . . .

31 U.S.C.A. § 3729 (1983).

Our review of the record satisfies us that the evidence amply supports the district court's findings that McLeod perpetrated a knowing fraud on the United States constituting both a violation of the False Claims Act and a common-law conversion.

In *Scolnick v. United States*, 331 F.2d 598, 599 (1st Cir.1964), the court held that the endorsement and deposit of a government check known to be issued by mistake is the presentation of a false claim under the Act. We agree with that ruling and conclude that in the instant case the district court correctly decided that McLeod, who endorsed and deposited three government checks, which he knew were issued to him by mistake, presented three false claims against the United States. The fact that McLeod did not make an actual demand for the money is irrelevant.

■ McLeod's argument that he could not have violated the False Claims Act because he made no claims against property of the United States is unconvincing. The government's temporary possession of the timber proceeds is a property interest sufficient to sustain a conversion action under Washington common law. *See Junkin v. Anderson*, 21 Wash.2d 256, 260, 150 P.2d 678, 679 (1944); *Malchow v. Boise Cascade*, 20 Wash.App. 258, 259, 578 P.2d 1337, 1338 (1978).

But for McLeod's conversion of the funds, the government would not have been required to issue a check for $55,425.80 to the true owner of the timber land. The government's financial loss caused by McLeod's fraud satisfies the provisions of the False Claims Act. In *United States v. Neifert-White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 961, 19 L.Ed.2d 1061 (1968), the Court discussed the history and the purpose of the False Claims Act:

> The original False Claims Act was passed in 1863 as a result of investigations of the fraudulent use of government funds during the Civil War. Debates at the time suggest that *the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.*

(Emphasis added.)

The Supreme Court has refused to accept a restrictive reading of the False Claims Act because the statute is remedial and "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White*

*Co.,* 390 U.S. at 233, 88 S.Ct. at 962. McLeod's conversion of, and subsequent refusal to return, the funds resulted in the government's suffering a financial loss sufficient to invoke the provisions of the False Claims Act.

## II. *Statute of Limitations*

The district court was correct in ruling that the conversion action is governed by 28 U.S.C. § 2415(b) (1976) which provides a six-year limitations period for an action for "conversion of United States property." In *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940), the Court stated that "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." (Citations omitted.) This rule applies whether the United States brings the suit in federal court or in state court. *Id.*

## III. *Motion to Implead*

We have reviewed McLeod's argument that the district court erred in denying his motion to implead Palzer and find it without merit. Palzer was not an indispensable party under Fed.R.Civ.P. 19, nor was he a real party in interest under Fed.R. Civ.P. 17(a). Thus joinder of Palzer was not compulsory.

## IV. *Double Damages*

The district court erred in refusing to award the government double damages and in awarding prejudgment interest. A person who commits any of the acts prohibited by the False Claims Act is liable for a $2,000 civil penalty for each false claim presented and double the amount of damages that the government sustained. *United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976).

**2.** That neither the language nor the legislative history of the Act offers clear guidance on how to determine the number of penalties or on how to compute the amount of double damages is no reason to withhold this penalty. Although the Supreme Court has discussed each of these

The Supreme Court in *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943), indicated that the double damages provision plays an important role in compensating the United States in cases where it has been defrauded—

> We think the chief purpose of the statutes here [the False Claims Act] was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole.

Double damages are necessary to compensate the government fully for "the costs, delays, and inconveniences occasioned by fraudulent claims." *United States v. Bornstein,* 423 U.S. at 315, 96 S.Ct. at 530–531 (footnote omitted). In *Bornstein* the court held that the government's damages must be doubled before compensatory payments are subtracted. "This method of computation, which maximizes the deterrent impact of the double-damages provision ... best comports in our view with the language and purpose of the Act." *Id.* at 316–17, 96 S.Ct. at 531. Thus, the double damages provision of the False Claims Act is meant not only to compensate the government fully but also to deter fraudulent claims from being filed against it.

There is no support for the proposition that a court may properly modify the False Claims Act's explicit double damage provision prescribed by Congress.[2] Thus, the district court erred by failing to adhere to the mandate of the statute.

## V. *Prejudgment Interest*

The district court awarded $33,916.02 as prejudgment interest. The Supreme Court has never decided whether it is appropriate to award prejudgment interest in addition to double damages and penalties, and two

questions, *United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976); *United States v. Neifert-White,* 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), it has never suggested that the imposition of double damages is in any way discretionary.

circuits that have addressed the issue are divided. The Eighth Circuit allows prejudgment interest to be awarded[3] while the Second Circuit does not.

■ The Second Circuit does not allow prejudgment interest to be awarded in addition to double damages and penalties because those items are the devices chosen by Congress to make the government whole. *United States v. Foster Wheeler Corp.,* 447 F.2d 100, 102 (2d Cir.1971). In the context of the False Claims Act, we find that this reasoning is sound and comports with the Supreme Court's pronouncement in *United States ex rel. Marcus v. Hess* that double damages ensure that the government is made whole. 317 U.S. at 551–52, 63 S.Ct. at 387–388. An award of prejudgment interest in addition to the double damages and penalties specified in the Act is not required to fulfill Congress' intent under the Act.

The district court's judgment should be modified to award the government double damages. The judgment should be further modified by vacating the award of prejudgment interest.

For these reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

The government shall recover its costs.

---

**3.** In *United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47 (8th Cir.1973), the Eighth Circuit allowed prejudgment interest to be awarded in addition to double damages and penalties. "In addition, interest should be assessed against the $478.93 from the date of the loan payment to the date of judgment *and* dou-bled, since interest can properly be recovered as 'damage' under the False Claims Act." *Id.* at 62 (emphasis in original). The Eighth Circuit case is the only one suggesting that prejudgment interest is recoverable under the False Claims Act.