**UNITED STATES of America, Plaintiff,**

**v.**

**PROPERTY ENTITLED IN THE NAMES OF ALEXANDER MORIO TOKI AND ELIZABETH MILA TOKI, Husband and Wife, as Tenants by the Entirety, Described in Transfer Certificate of Title No. 235,637 Tax Map Key No. 9–7–**

086–131(1), including all of that Certain Parcel of Land Situate at Manaka–Uka and Waimano, District of Ewa, City and County of Honolulu, State of Hawaii, Together with Appurtenances and Improvements, Defendant.

Civ. No. 90–421 ACK.

United States District Court,
D. Hawaii.

Oct. 11, 1991.

Daniel Bent, Beverly Wee, U.S. Attorney's Office, Honolulu, Hawaii, for plaintiff.

Edwin A. Ebisui, Jr., Dan S. Ikehara, Wahiawa, Hawaii, for defendant.

David Bettencourt, Territorial Law Office Suite, Honolulu, Hawaii, for claimant Alexander Morio Toki.

## ORDER DENYING CLAIMANT ELIZABETH TOKI'S MOTION FOR DISMISSAL, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### I. INTRODUCTION

Elizabeth Toki moves for a dismissal of the complaint, or for summary judgment. The U.S. moves for summary judgment. For the following reasons, the court denies Elizabeth Toki's motion, and grants in part and denies in part the U.S.'s motion.

### II. FACTS

In 1978, Alexander Toki (Alexander) and Elizabeth Toki (Elizabeth) purchased a home in Pearl City. They took title as tenants by the entirety.

In 1986, Alexander met, at a shopping center, with an undercover DEA agent posing as a participant in a cocaine transaction. Alexander negotiated with the undercover agent to purchase cocaine. During the negotiations, Alexander mentioned that he had obtained 4 pounds of marijuana that day and that he had approximately 2 pounds at his home. Alexander was ar-

rested. At the time of his arrest, Alexander consented to a search of his home. DEA agents took Alexander to his home the same evening and again asked him, and for the first time Elizabeth, whether the agents could search the home. Alexander and Elizabeth consented in writing. However, Elizabeth claims that she and Alexander consented only after DEA agent Robert Aiu threatened to handcuff the entire family outside on the sidewalk until the agents obtained a search warrant. Agent Aiu claims that he did not make such a statement.

The search of the home yielded approximately 2 kilograms of marijuana, approximately 50 grams of hashish, and paraphernalia associated with drugs.

In 1989, Alexander pled guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).

On May 23, 1990, the U.S. filed this case to forfeit the property where the drugs were discovered. The basis of the forfeiture action was that the property was used to facilitate or was intended to be used to facilitate a violation of 21 U.S.C. § 841.

Elizabeth filed a verified claim asserting an "undivided 50% interest" in the property. Alexander also filed a claim asserting an "undivided 50% interest" in the property.

The U.S. filed its present motion seeking summary judgment as to Alexander's interest in the property only. The U.S. claimed that Alexander is not asserting that he is an innocent owner and that probable cause exists for forfeiting the property.

Elizabeth also filed a motion. She sought dismissal of the case, asserting there was an illegal search of the property and that laches bars the action. Alternatively, Elizabeth seeks summary judgment on her claim that she is an innocent owner. Elizabeth also claims that if she is found to be an innocent owner, then the U.S.'s motion should be denied because her rights as a tenant by the entirety entitle her to the entire property.

## III. DISCUSSION

### A. STANDARD

█ Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " *'specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815

F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Service*, 809 F.2d at 630–31.

## B. THE MERITS

■ The U.S. bases this forfeiture action on 21 U.S.C. § 881(a)(7) which provides: The following property shall be subject to forfeiture to the United States and no property rights shall exist in them: ... All real property, including any right, title, and interest ... in the whole of any lot or tract of land which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprison-

ment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

"Before a forfeiture will lie, the government must initially demonstrate probable cause to believe that the seized property was involved with illegal drug transactions." *U.S. v. Padilla*, 888 F.2d 642, 643 (9th Cir.1989) (citations omitted). "Once the government has demonstrated probable cause to institute the forfeiture action, the burden shifts to the claimant." *Id.* "This Circuit applies an 'aggregate of facts' test to find probable cause for forfeiture." *Id.* Probable cause for forfeiture exists if there is evidence sufficient to warrant a reasonable belief (i.e., more than "mere suspicion") that the property has been used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation under Title 21 punishable by more than one year's imprisonment.[1] *See id.* at 643–44; *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 447 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).

### 1. ELIZABETH'S MOTION

#### *Motion to Dismiss*

Elizabeth claims the complaint should be dismissed because there was an illegal search of her home. She contends that evidence of the search should be excluded. Elizabeth asserts that exclusion of the evidence would negate the existence of probable cause to forfeit the property.

Elizabeth also contends that the complaint should be dismissed because of laches.

#### *Alleged Illegal Search of the Property*

Elizabeth claims that the complaint should be dismissed because the search of the property was conducted without volun-

---

**1.** Alexander plead guilty to one count of knowingly and intentionally possessing with intent to distribute approximately 2,160.68 grams of mar-

ijuana under 21 U.S.C. § 841(a)(1). Such a plea would subject Alexander to imprisonment of up to five years under 21 U.S.C. § 841(b)(1)(D).

tary consent. Therefore, she asserts that the evidence of the marijuana should be suppressed and the case dismissed for lack of probable cause.

Because forfeiture proceedings are quasi-criminal in character and meant to penalize the commission of an offense against the law, the exclusionary rule applies to such proceedings, barring evidence obtained in violation of the fourth amendment.

*One 1977 Mercedes Benz,* 708 F.2d at 448. It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *"per se* unreasonable ... subject to only a few specifically established and well-delineated exceptions."* [citations] It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. [citations].

*Schneckloth v. Bustmonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973).

[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

*Id.* at 248–49, 93 S.Ct. at 2059.

In the case at bar, there was no search warrant. Even though she and her husband "consented" both verbally and in writing, Elizabeth claims the totality of the circumstances surrounding the consent made it invalid. Elizabeth argues that she and Alexander were subjected to both duress and coercion and therefore did not voluntarily consent to the search.

In particular, she claims that the following circumstances indicate that she and Alexander did not voluntarily consent:

(1) there were approximately 10 agents at the property which made Elizabeth afraid for herself, her husband, and children. Affidavit of Elizabeth ¶ 4, at 2;

(2) DEA agent Robert Aiu told the Toki's at approximately 8:30 p.m. "that if we did not sign the consent form (for the search of the house) our entire family would be handcuffed outside on the sidewalk until the agents/officers obtained a search warrant." *Id.* ¶ 3;

(3) Elizabeth did not read the consent form, nor was she aware she could refuse to consent and require the officers to obtain a warrant. *Id.* ¶ 5; and

(4) The agents gave the Toki's "no choice but to sign the consent form and we did so for the sake of our children's health and safety, as well as our own." *Id.* ¶ 6.

In response, the U.S. produces the affidavit of Robert Aiu wherein Aiu claims:

(1) He never made a statement to the effect that he would have the family handcuffed outside while they awaited a search warrant. Declaration of Robert Aiu (attached to U.S.'s opposition memo) ¶ 3, at 3;

(2) Alexander and Elizabeth were both given the opportunity to read the consent form they signed. *Id.* ¶ 4. Alexander read it and then signed it. *Id.;*

(3) None of the agents at the house made any threats or had their guns drawn. *Id.;* and

(4) Elizabeth was never arrested. *Id.* ¶ 5, at 4.

■ If one were to believe Elizabeth's story, there would be an arguable basis for believing that her consent was involuntary. On the other hand, the government's version indicates that there was no duress or coercion. The government makes a convincing argument that there was no coercion or duress. *See* U.S.'s opposition, at 3–5 (Tokis given chance to read consent form which delineated right to refuse consent;

Aiu disputes Elizabeth's version of events; Tokis not handcuffed; only one agent present in room where consent form was signed; no weapons brandished; Elizabeth educated and stated she does not sign things without first reading them; Elizabeth not under arrest; her husband (not police) freely encouraged her to sign; non-confrontational nature of search).

It is not necessary to resolve the factual dispute about what happened at the home. Even if the court assumes that the consent obtained at the home was invalid, and excludes the evidence seized at the property as Elizabeth requests, there is still enough evidence supporting probable cause to forfeit the property.

For example, the remaining evidence indicates that Alexander was distributing marijuana. U.S.'s motion, exhibit G (Alexander's plea agreement). In addition, just prior to the search of the property, Alexander admitted to keeping marijuana that he was selling at the property. *See* Elizabeth's motion, exhibit B (transcript of conversation between Alexander and DEA agent). Finally, Alexander admits that he is not an innocent owner. U.S.'s motion, exhibit H. This in itself would lead one to reasonably believe that the property was used to facilitate the distribution of marijuana and establish probable cause to forfeit the property.

Furthermore, even assuming that Elizabeth did not voluntarily consent, Alexander did. Nowhere does he assert that his consent was coerced or obtained under duress. Rather, Elizabeth conclusorily asserts on Alexander's behalf that the events occurring at the home rendered his consent invalid.

■ In fact, even before the events at the home, Alexander consented to a search. Alexander consented to a search of the home when he was arrested at the shopping center. Elizabeth's motion, exhibit A, at 3 (DEA investigative report on Alexander). Thus, even if the court were to find that the consent obtained at the home was invalid, Alexander consented before then. Elizabeth does not contest this previous consent given by Alexander. Indeed, she could not because she was not there to observe the circumstances. Only Alexander or someone else who was present at the scene could claim that such consent was invalid. No one present at the shopping center has asserted that such consent was involuntary.

Moreover, Alexander could consent notwithstanding the fact that Elizabeth was not present at the shopping center because it is undisputed that Alexander lived at the home and had " 'common authority' " over the premises. *See U.S. v. Brannan*, 898 F.2d 107, 108 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 100, 112 L.Ed.2d 71 (1990).

The court finds that Alexander consented without duress or coercion at the shopping center. Therefore, the court denies the motion to dismiss insofar as it is based on illegally obtained evidence.

*Laches*

Elizabeth claims that the government is barred from bringing this lawsuit because of laches. The government claims that it did not unreasonably delay in bringing the action because the lawsuit was filed before the expiration of the applicable statutes of limitation. Therefore, the government argues that laches should not apply.

■ It is not necessary to address the government's argument about the reasonableness of its filing of the lawsuit. "The government is not subject to the defense of laches when enforcing its rights." *U.S. v. Menatos*, 925 F.2d 333, 335 (9th Cir.1991) (citing *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. McLeod*, 721 F.2d 282, 285 (9th Cir.1983)). Thus, Elizabeth cannot base her motion on laches. The motion is denied on this issue.

*Conclusion re Motion to Dismiss*

The motion to dismiss is denied. The search was not illegal as there was voluntary consent to search the property. Alternatively, even if there was a lack of consent, and the marijuana evidence is exclud-

ed, there is still sufficient evidence to establish probable cause.

In addition, Elizabeth's claim that the complaint should be dismissed because of laches is rejected because such a defense cannot be asserted against the government.

### Elizabeth's Motion for Summary Judgment

Elizabeth claims that she was an innocent owner and is entitled to summary judgment on this issue. The U.S. disputes this.

In addition, Elizabeth claims if the court finds she is an innocent owner, the government's motion for summary judgment seeking forfeiture of Alexander's 50% of the property should be denied because of Elizabeth's status as a tenant by the entirety.

### Innocent Owner

■ Elizabeth has the burden to show she was an innocent owner, by establishing a lack of knowledge or consent with respect to events forming the basis of the forfeiture action. *United States v. 1980 Red Ferrari*, 827 F.2d 477, 478 (9th Cir. 1987). "[T]he government need not prove, and the district court need not find, that the claimant *had* actual knowledge. Rather, it is the claimant's responsibility to prove the *absence* of actual knowledge." *Id.* (quoting *United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 907 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)) (emphasis in original).

■ Elizabeth states in her affidavit that she was unaware of the marijuana in the house. Elizabeth's affidavit ¶ 11, at 3. She points to the fact that the marijuana at the house was delivered there only the day before. She also states that she "had no knowledge or any idea that [her] husband was or may have been involved in selling or using cocaine or marijuana." *Id.* ¶ 7, at 2–3. Contradictorily, Elizabeth then states that she "was aware that [Alexander] would smoke marijuana...." *Id.* ¶ 8. However, she disapproved of the activity and let Alexander know. *Id.* ¶ 9. Elizabeth admits she knew about the hashish

and that she hid it from Alexander so that he could not use it. *Id.* ¶ 10. Elizabeth states that she has never used or sold drugs. *Id.* ¶ 15. Elizabeth states that certain items recovered at the house which are usually associated with drugs such as guns were used to kill sharks that Alexander encountered in his work as a fisherman; that a heat sealer was used to seal fresh fish and foods; that a triple beam scale was used to weigh fishing lead; and that plastic bags were used to store fresh fish. *Id.* ¶¶ 13–14.

Elizabeth claims that the foregoing establishes that she is an innocent owner entitled to summary judgment.

The U.S. asserts there are issues of fact over whether Elizabeth was an innocent owner. The U.S. points to the fact that Elizabeth knew Alexander smoked marijuana and was aware of hashish apparently belonging to Alexander in the house. In addition, the U.S. points to the recovery of over two kilograms of marijuana found throughout the house, including over 87 grams found in the master bedroom dresser. Aiu declaration ¶ 6, at 4 (attached to U.S.'s opposition). The U.S. also points to deposition testimony that contradicts her affidavit and puts her credibility at issue. *See* U.S.'s opposition, at 8.

Based on the foregoing, there is a material issue of fact over whether Elizabeth knew that the house was being used by Alexander for his drug activities. The marijuana was located throughout the home where she lived and she knew her husband was involved with it. Therefore, the proposition that she was unaware of the marijuana is questionable. It raises a material issue of fact.

■ Elizabeth also claims she did not consent, evidenced by the facts that she expressed her objections to Alexander's use of marijuana, and her act of hiding the hashish. To prove lack of consent, Elizabeth must prove that she did "all that reasonably could be expected to prevent the illegal activity once ... she learns of it." *U.S. v. Property Titled in the Names*

*of Ponce,* 751 F.Supp. 1436, 1441 (D.Haw. 1990).

A claimant may not prevent forfeiture merely by proving that he or she did not explicitly consent to the activity. Turning a "blind eye" to the illegal activity will not suffice. However, if a claimant proves he or she has done all that reasonably could be expected to prevent the illegal activity from continuing, the claimant's interest is not forfeitable under § 881(a)(7).

*Id.*

Viewing the evidence in the light most favorable to the United States, summary judgment should be denied. "[R]easonable persons could differ" over whether simply objecting and hiding the hashish were *all* that Elizabeth could have reasonably done to prevent the illegal activity. *Id.* at 1442.

Accordingly, the court denies Elizabeth's motion for summary judgment.

### 2. U.S.'s MOTION FOR SUMMARY JUDGMENT

The government claims there is probable cause to forfeit Alexander's interest in the property. The government points to the following evidence:

(1) Alexander plead guilty to one count of knowingly and intentionally possessing with intent to distribute approximately 2,160.68 grams of marijuana under 21 U.S.C. § 841(a)(1);

(2) DEA agent Aiu believes that the property was used to facilitate the commission of a crime under Title 21 based on the fact that he conducted a search of the property on the same date that Alexander was arrested and found on the property approximately 2,300 grams of marijuana, 51 grams of hashish, a triple beam scale, a heat sealer, and two guns;

(3) Alexander admits he was not an innocent owner; and

(4) Alexander told the DEA undercover agent he had approximately 2 pounds of marijuana at his home just prior to his arrest;

On the Friday morning preceding the Monday hearing on these motions, Alexander filed a memo entitled "suggestion to stay proceedings and to continue hearing ... pending appellate resolution of critical legal issues." Based on the extremely late filing of this memo (oppositions to motions are due 18 days before the hearing date, *see* Local Rule 220–3), the court will disregard the memo. Notwithstanding this, the memo provides nothing to rebut the U.S.'s showing of probable cause to forfeit the property. It merely "suggests" a stay until issues relating to certain defenses (i.e., double jeopardy) claimed by Alexander, and not at issue in any of the pending motions, are resolved by a pending Ninth Circuit case.

The court instructs the parties to file memoranda with the court upon resolution of the Ninth Circuit case. Moreover, in light of the fact that the court concludes that the portion of the U.S.'s motion requesting forfeiture should be denied until resolution of Elizabeth's innocent owner status (*see* discussion *infra*), Alexander in effect obtains the relief he requests in his memo—a postponement of the forfeiture.

▆▆▆▆ As noted above, there is ample evidence to establish probable cause, and the court finds that there is probable cause to forfeit the property. Alexander has admitted he is not an innocent owner. Therefore, but for the tenancy by the entirety issue, his interest in the property would otherwise be forfeited.

### *Tenants by the Entirety* [2]

A tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt.... [A] tenancy by the entirety must be held exclusively by married spouses who

---

**2.** The U.S. does not dispute that the Tokis' hold title to the property as tenants by the entirety. In other words, the U.S. does not dispute that the five "unities" associated with a tenancy by the entirety are lacking. *See U.S. v. One Single Family Residence,* 894 F.2d 1511, 1514 (11th Cir.1990) (five "unities" (under Florida law) are marriage, title, time, interest, possession).

alone possess the mutual right of survivorship.

*Traders Travel International, Inc. v. Howser,* 69 Haw. 609, 613–14, 753 P.2d 244 (1988) (citations omitted). A tenancy by the entirety is terminated only by joint action of the spouses, *Sawada v. Endo,* 57 Haw. 608, 614, 561 P.2d 1291 (1977), by divorce, *Howser,* 69 Haw. at 615, 753 P.2d 244, or by death. *Id.* at 614, 753 P.2d 244 ("right of survivorship"). The interest of one spouse is not subject to levy and execution by his or her creditors. *Sawada,* 57 Haw. at 617, 561 P.2d 1291.

■■■ Two courts of appeal have addressed the issue of what interest the government and innocent spouse have in a civil forfeiture proceeding where one spouse is an innocent owner and the other is not, and where the property is held in a tenancy by the entirety. In *U.S. v. Certain Real Property at 2525 Leroy Lane,* 910 F.2d 343, 351 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991) (Michigan law), the Sixth Circuit held that:

> the Government may properly acquire only the interest which [the non-innocent spouse] held as cotenant by the entireties. However, the Government cannot occupy the position of [the non-innocent spouse] in the entireties estate, since the estate is founded on marital union, and the Government obviously cannot assume the role of spouse to [the innocent spouse]. By acquiring [the non-innocent spouse's] interest in the entireties estate, the Government is precluded from obtaining [the non-innocent spouse's] interest in the property unless and until [the innocent spouse] predeceases [the non-innocent spouse] or the entireties estate is otherwise terminated by dissolution of marriage or joint conveyance.... [T]he entire property [does not] vest[ ] in [the innocent spouse] by reason of the forfeiture. Instead, we conclude that *the interest acquired by the Government is most analogous to the position occupied by a judgment creditor of one spouse....* [The innocent owner] would be entitled to live in the house during the duration of the tenancy [by the entirety],

and *the Government would have a lien on the property to the extent of the value of [the non-innocent owner's] interest which would prevent [the innocent owner spouse] from obtaining the entire proceeds upon the sale of the property.*

*Id.* at 351 (emphasis added).

In *U.S. v. One Single Family Residence,* 894 F.2d 1511, 1516 (11th Cir.1990) (Florida law), the Eleventh Circuit held:

> The interest [the innocent spouse] has under Florida law is an undivided right of possession, title, and enjoyment of the whole property. To convert this right into a tenancy in common [which is what the government seeks to achieve], where [the innocent spouse] has only the right to a portion of the property or a portion of the proceeds should the government pursue partition—which could not occur with an entireties estate—appears to us to be a taking without due process violating the Fifth Amendment of the federal Constitution. Conversely, as a tenant in common, the government would possess the right to freely alienate its half-interest of the property and the right to force partition on its co-tenant—a far greater interest than that possessed by the [non-innocent spouse] who could alienate and convey his interest only with the consent of and in concert with his wife.... The words of 881(a)(7) do not support the government's assertion that the innocent owner's interest amounts to whatever is left over after the government has effected forfeiture. Instead, the government obtains through forfeiture whatever interest remains in the property after the innocent owner's interest has been excepted.... Unfortunately for the government, [the innocent spouse's] interest encompasses "all right, title and interest" in the property as all three are indivisible between a husband and wife holding properties by the entireties.

*Id.* at 1516.

Thus, the court held that

> [b]ecause we see no way for the government to obtain a meaningful share in an

entireties property without forfeiting some part of the innocent spouse's interest, as long as the spouses remain married to each other and do nothing to terminate the entireties estate, we hold that none of the property can be forfeited to the United States.

*Id.* at 1512. However, the court also held that

> [n]othing would prevent the government from attempting to execute or levy on its interest should the entireties estate be altered by changes in circumstances or by court order. That is, we do not rule out the possibility that if the United States filed a lis pendens against the property, the government might acquire in a later forfeiture proceeding [the non-innocent spouse's] interest in the property should he divorce his spouse, should [the innocent spouse] predecease [the non-innocent spouse], or should their interests be transmuted into some divisible form by their actions or by law. In such case, their interests would become distinct and separate so that forfeiture of [the non-innocent spouse's] interest in the property would not affect her rights.

*Id.* at 1516–17 n. 6.

These two cases establish that the U.S. cannot forfeit Alexander's interest in the property if Elizabeth is an innocent owner as long as the tenancy by the entirety exists. Indeed, the U.S. cannot acquire any interest in the property if Elizabeth is an innocent owner. Rather, the government acquires the right to file a lis pendens against the property which can be executed when the entirety estate is terminated, *One Single Family Residence, supra,* or the government can file a lien against the property. *Certain Real Property at 2525 Leroy Lane, supra.*

The government discounts the two above-mentioned court of appeals cases and relies on two district court cases: *U.S. v. South 23.19 Acres of Land,* 694 F.Supp. 1252 (E.D.La.1988); and *U.S. v. One 1971*

*Chevrolet Corvette,* 393 F.Supp. 344 (E.D.Pa.1975).

The court rejects *South 23.19 Acres of Land.* First, it dealt not with tenancies by the entirety, but rather community property laws. Moreover, it stood for the proposition that state laws should not interfere with uniform application of federal forfeiture law.[3] Based on *One Single Family Residence* and *Certain Real Property at 2525 Leroy Lane,* it appears the "uniform" federal forfeiture law is that in the case of a tenancy by the entirety involving an innocent spouse, the U.S. is not entitled to forfeit the property:

> Here we do not say that [an innocent spouse's] interest cannot be forfeited because Florida law prohibits forfeiture of entireties property as a result of the illegal act of one spouse. Rather we hold [the innocent spouse's] interest, *protected from forfeiture by federal statute,* encompasses the whole property and nothing remains to forfeit to the United States.

*One Single Family Residence,* 894 F.2d at 1516 n. 5 (emphasis added). The U.S.'s argument is akin to the argument made in *One Single Family Residence* where it was argued that "if Florida law will not permit the forfeiture of a one-half interest in the subject property, then federal law should preempt the state law in this case because the Florida law of entireties directly conflicts with the federal law of forfeiture...." 894 F.2d at 1517. The *One Single Family Residence* court addressed this argument by analyzing whether Congress intended with the forfeiture statutes to preempt state law defining interests in land. *Id.* at 1517–20. The court concluded that there was no preemption. Moreover, the court found that any rule that would subject an innocent tenant by the entirety to the forfeiture of his or her entireties estate would actually be contrary to Congressional intent because Congress "intended full protection of the interests of innocent owners." *Id.* at 1518.

**3.** *South 23.19 Acres of Land* is also distinguished and criticized in *One Single Family Residence.*

894 F.2d at 1516 n. 5.

With respect to *One 1971 Chevrolet Corvette*, the U.S. relies on the following language in the case:

> Claimants contend that since neither spouse may be permitted to destroy a tenancy be the entireties, no forfeiture may be ordered. This contention misconstrues the basic nature of a forfeiture proceeding which is considered an *in rem* action against the vehicle. [citation] The forfeiture provisions are concerned primarily with possession, not title or ownership of a vehicle. It has been stated countless times that the innocence, non-involvement and lack of negligence of the owner of a seized vehicle is not a defense to a forfeiture action. [citations]

393 F.Supp. at 347. This reasoning is somewhat questionable. Moreover, *One 1971 Chevrolet Corvette* dealt with completely different forfeiture statutes (49 U.S.C. [App.] §§ 781, 782) than the case at bar. "[T]he *in rem* provisions of 21 U.S.C. § 881(a)(7) specifically provide that '*no property* shall be forfeited under this paragraph, *to the extent of* an interest of' an innocent owner." *Certain Real Property at 2525 Leroy Lane*, 910 F.2d at 350 (emphasis in original). This indicates that the forfeiture statute at issue *is concerned about title and ownership* when it comes to the interests of innocent owners. Further, subsequent to the decision in *One 1971 Chevrolet Corvette*, the pertinent statutes were amended in 1988 to expressly add the innocent owner defense to such forfeiture proceedings. *See* 21 U.S.C. § 881(a)(4)(C); 49 U.S.C. [App.] § 782. Clearly, the innocence of an owner with respect to real property is a defense under § 881(a)(7). *Certain Real Property at 2525 Leroy Lane*, 910 F.2d at 350.

The U.S. also appears to argue that a holding similar to those in *Certain Real Property at 2525 Leroy Lane* and *One Single Family Residence* would allow married drug dealers, who were clever enough to take title as tenants by the entirety, to circumvent the forfeiture laws. This argument was addressed in *One Single Family*

*Residence*, wherein the court noted that such a problem is, in reality, *de minimis*. *See* 894 F.2d at 1519.

The U.S. also argues that this court should apply federal forfeiture law with respect to the U.S.'s right to the non-innocent spouse's (Alexander's) interest in the property, and then apply Hawaii law to determine what interest remains for Elizabeth. There is no authority cited for this proposition. Moreover, to accede to the U.S.'s request to apply federal law to determine its interest in the property leads to application of *Certain Real Property at 2525 Leroy Lane* and *One Single Family Residence*. These cases hold that if Elizabeth is an innocent owner, then the U.S. takes no interest in the land, but rather has an interest analogous to a judgment creditor, or must file a lis pendens and await a termination of the entireties estate.

■ The U.S. argues that it should be substituted for Alexander on the deed to the property and that this substitution via the forfeiture proceeding terminates the tenancy by the entireties by operation of law. However, there is no authority cited for this proposition. As noted above, the only way for the estate to be terminated is by death, divorce, or joint agreement. The estate does not terminate upon a judgment of forfeiture. *Certain Real Property at 2525 Leroy Lane* and *One Single Family Residence, supra.*

The U.S. also argues that the "relation back" doctrine, codified in § 881(h),[4] results in a "statutory transfer" of Alexander's interest in the property to the U.S., and that such transfer destroys the tenancy by the entirety. Accordingly, the U.S. argues, the tenancy is converted to one in common, which would allow the U.S. to forfeit Alexander's interest.

The court rejects this argument for the same reasons cited in *One Single Family Residence. See* 894 F.2d at 1515–16.

*Certain Real Property at 2525 Leroy Lane* and *One Single Family Residence*

---

**4.** § 881(h) provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."

are helpful with respect to discussing the federal law of forfeiture. Although not completely clear, they indicate that the U.S. obtains a right to entireties property which is analogous to a judgment creditor of one spouse. *Certain Real Property at 2525 Leroy Lane,* 910 F.2d at 351; *cf. One Single Family Residence,* 894 F.2d at 1516 n. 6.

However, as the cases point out, it is state law that determines the interest that the U.S. has in a forfeiture proceeding against a property held in a tenancy by the entirety. Hawaii law appears to vary markedly from Michigan law (*Certain Real Property at 2525 Leroy Lane* ).

For example, *Certain Real Property at 2525 Leroy Lane* held that, under Michigan law, the U.S. had a lien on the property held by the entireties. 910 F.2d at 351. This is contrary to Hawaii law. *See Sawada,* 57 Haw. at 614, 561 P.2d 1291 (quoting *Jordan v. Reynolds,* 105 Md. 288, 295–96, 66 A. 37, 39 (1907)). *Sawada* cited with approval to *Jordan v. Reynolds* wherein it was held that "no lien could attach against entirety property for the separate debts of the husband, for that would be in derogation of the entirety of title in the spouses and would be tantamount to a conversion of the tenancy into a joint tenancy." *Id.*

It is clear, we think, if the judgment here is declared a lien, but suspended during the life of the wife, and not enforceable until her death, if the husband should survive the wife, it will defeat the sale here made by the husband and wife to the purchaser, and thereby make the wife's property liable for the debts of the husband.

*Id.* (quoting *Jordan,* 105 Md. at 295–96, 66 A. at 39). The *Sawada* court concluded that property held by the entireties could be conveyed free and clear of any judgment against one spouse. 57 Haw. at 617, 561 P.2d 1291. The court's rationale was based on the nature of the estate's " 'indestructible right of survivorship ... [and] a broad immunity from claims of separate creditors....' " *Id.* at 616, 561 P.2d 1291 (quoting *In re Estate of Wall,* 440 F.2d

215, 218 (D.C.Cir.1971)). Moreover, the court based its holding on the public policy of maintaining " '[t]he interest in family solidarity.... It is a convenient mode of protecting a surviving spouse from inconvenient administration of the decedent's estate and from the other's improvident debts.' " *Id.* (quoting *Fairclaw v. Forrest,* 130 F.2d 829, 833 (D.C.Cir.1942), *cert. denied,* 318 U.S. 756, 63 S.Ct. 531, 87 L.Ed. 1130 (1943)). In summary, Hawaii law dictates that the U.S. does not acquire a lien against entireties property.

Moreover, in light of the fact that, under *Sawada,* entireties property in Hawaii can be conveyed free and clear of any judgment or lien against one spouse, a lis pendens filed against the property would be wholly ineffectual. *Cf. One Single Family Residence,* 894 F.2d at 1516 n. 6 (Florida law; file lis pendens).

The court concludes that, under Hawaii law, if one spouse owning property as a tenant by the entireties is an innocent owner, then the U.S. cannot obtain an interest in the property. Under *Sawada,* property held as tenants by the entirety may be conveyed free and clear of any levy, lien, or lis pendens due to a judgment against one spouse. Thus, the government is relegated to a position analogous to that of an unsecured judgment creditor of the non-innocent spouse.

Under § 881(a)(7), Congress specifically intended to protect the interests of innocent owners. Under Hawaii law, the U.S. cannot forfeit the interest of an owner of property held in the entireties if the other spouse is an innocent owner.

### Conclusion re U.S.'s Motion

The U.S. has established (1) probable cause to forfeit the property, and (2) that Alexander is not an innocent owner.

However, if Elizabeth is an innocent owner, then the U.S. cannot forfeit the property.

Thus, the motion is granted insofar as probable cause and Alexander not being an innocent owner are concerned. However, the motion is denied to the extent it seeks

forfeiture at this time because it must first be determined whether Elizabeth is an innocent owner.

## IV. CONCLUSION

The court denies Elizabeth's motion to dismiss because there was voluntary consent given by Alexander for the search of the home. Alternatively, even if the marijuana found at the house is excludable because of involuntary consent, there is enough evidence to establish probable cause. In addition, the motion is denied because laches cannot be asserted against the government. Finally, the motion, insofar as it requests summary judgment, is denied because there are material issues of fact with respect to whether Elizabeth was an innocent owner.

The U.S.'s motion for summary judgment is granted to the extent that it has shown there was probable cause to forfeit the property. However, the motion is denied as to forfeiture because there has been no determination that Elizabeth is not an innocent owner; and so long as one spouse is an innocent owner then the U.S. is not entitled to forfeit property held as tenants by the entirety.