**TALLEY INDUSTRIES INC.;**
**Consolidated Subsidiaries,**
**Petitioners–Appellees,**

v.

**COMMISSIONER INTERNAL**
**REVENUE SERVICE,**
**Respondent–Appellant.**

No. 96–70061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1997.

Decided June 16, 1997.

Gary R. Allen and Steven W. Parks, United States Department of Justice, Washington, DC, for respondent-appellant.

James G. Phillipp, Gibson, Dunn & Crutcher, Los Angeles, CA, for petitioners-appellees.

Before: THOMPSON and T.G. NELSON, Circuit Judges, and FITZGERALD, District Judge.*

* Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

The Commissioner of Internal Revenue (Commissioner) appeals the tax court's summary judgment in favor of Talley Industries, Inc. (Talley) and one of its subsidiaries, Stencel Aero Engineering Corp. (Stencel). The parties dispute whether a portion of a settlement that Talley paid to the United States is deductible as an ordinary and necessary business expense under 26 U.S.C. § 162(a).

The Commissioner contends the disputed portion is a "fine or similar penalty" and, thus, is not deductible pursuant to 26 U.S.C. § 162(f). The tax court disagreed, determining the portion was intended to compensate the government for its losses. We have jurisdiction pursuant to 26 U.S.C. § 7482, and we reverse.

## FACTS

Stencel is a leading manufacturer of ejection seats for military aircraft. Stencel had obtained several government contracts with the Department of Defense and the Department of the Navy for the production of ejection seats and for research and development projects.

In March 1985, Stencel and three of its officers were indicted on forty-three counts of fraudulent conduct relating to Stencel's billing practices for work performed under its government contracts. In June 1985, pursuant to a plea agreement, Stencel pleaded guilty to ten counts of making false and fraudulent statements, in violation of 18 U.S.C. § 1001.

The counts alleged that, in August 1984, Stencel submitted falsified employee time cards to the United States. Specifically, Stencel altered employee time cards so that labor costs which should have been allocated to fixed-price contracts were allocated to government contracts which did not have a fixed price. The district court accepted the plea and required Stencel to pay a fine of $10,000 on each count, for a total fine of $100,000, and to make full restitution to the federal government, in an amount to be determined by the Navy at a later date.

Prior to Stencel's guilty plea, in April 1985, the Defense Contract Administration Service notified Stencel that any invoices which had been submitted but not yet paid, and any invoices submitted in the future, would not be paid unless Stencel submitted sworn certificates attesting to the validity of the amounts charged in the invoices. Stencel was unable to submit the certificates because the extent to which the time cards had been altered was unknown.

Also, in May 1985, the Navy suspended Talley and Stencel from further government contract work. The suspension of Talley was lifted in July 1985 after the conclusion of the criminal proceedings. The suspension of Stencel remained in effect while the parties negotiated a settlement of Stencel's potential civil liability.

Stencel faced potential civil liability under the False Claims Act (FCA), 31 U.S.C. § 3729; the Truth in Negotiation Act (TINA), 10 U.S.C. § 2306a; and common law claims for breach of contract. Settlement discussions began immediately.

There was some urgency to reaching a settlement. The outstanding invoices submitted by Stencel totalled approximately $2.3 million and the Navy was its primary customer. Also, Stencel was one of three companies that could manufacture the ejection seats and Navy fighter planes had been grounded because the Navy could not obtain new seats or repair existing seats.

In January 1986, the Navy, Talley, and Stencel entered into an "Interim Agreement." Pursuant to this agreement, Stencel agreed to pay the Navy $600,000 and to continue negotiations with the Navy to settle its potential civil liability.

The Navy later determined it suffered $1,885 in losses resulting from just the ten counts to which Stencel pleaded guilty. The Defense Contract Audit Agency estimated the Navy's losses from all the falsified invoices submitted in 1984 to be from $240,000 to $358,000. The government also believed Stencel began submitting falsified invoices as early as 1979. After an audit, the government estimated its total actual loss, for years 1979 through 1984, to be $1.56 million.

In February 1986, the United States, the Navy, Talley, and Stencel entered into a settlement agreement. Pursuant to this agreement, Stencel and Talley agreed to pay the United States a total of $2.5 million, minus the $600,000 already paid by Stencel pursuant to the Interim Agreement; the government agreed to pay Stencel's invoices; and Stencel's obligation to provide restitution in the amount of $1,885 as ordered in the criminal judgment was satisfied.

For tax year 1986, Talley and its subsidiaries, including Stencel, deducted the $2.5 million paid to the government pursuant to the settlement. They claimed this deduction as an ordinary and necessary business expense. The Commissioner disallowed the deduction and determined a tax deficiency of $853,042. Talley and Stencel filed a petition for redetermination before the tax court.

Talley and the Commissioner filed cross-motions for summary judgment. The tax court determined there was no genuine issue of material fact and granted Talley's summary judgment motion. The tax court determined the $1,885 paid in restitution pursuant to the criminal judgment was a "fine or similar penalty" under section 162(f) and not deductible. The tax court determined the remaining portion of the $2.5 million payment was intended to compensate the Navy for its losses and, thus, was deductible. The tax court rejected the Commissioner's argument that $940,000 of this amount, which was the portion over and above the government's estimated loss of $1.56 million, was intended as punishment and, consequently, not deductible. The Commissioner appeals.

## DISCUSSION

The only issue in this appeal is whether the $940,000 portion of the settlement is deductible. Talley does not challenge the tax court's determination that the $1,885 payment in restitution is not deductible. The Commissioner does not challenge the tax court's determination that the $1.56 million portion of the settlement (minus the $1,885 restitution payment) constitutes compensation for the government's losses and is deductible.

■ We review de novo the tax court's grant of summary judgment. *Sierra Club Inc. v. Commissioner,* 86 F.3d 1526, 1530 (9th Cir.1996). We review "the record in the light most favorable to the Commissioner to determine whether there is a genuine issue of fact and whether the [t]ax [c]ourt applied the substantive law correctly." *Id.* (quotations and citation omitted). We conclude the tax court erred by granting summary judgment because a genuine issue of fact exists as to the nature and purpose of the disputed portion of the settlement.

### A. Overview

Section 162(a) allows a deduction for "all the ordinary and necessary expenses" incurred by a taxpayer "in carrying on any trade or business." 26 U.S.C. § 162(a). Section 162(f) provides an exception:

> No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

26 U.S.C. § 162(f). The Treasury Regulations define a "fine or similar penalty" as including amounts:

> (ii) Paid as a civil penalty imposed by Federal ... law .... [or]
>
> (iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal) ....

26 C.F.R. § 1.162–21(b)(1)(ii), (iii). The Treasury Regulations provide: "Compensatory damages ... paid to a government do not constitute a fine or penalty." 26 C.F.R. § 1.162–21(b)(2).

■ Whether a civil penalty is deductible depends upon "the purpose which the statutory penalty is to serve." *Southern Pac. Trans. Co. v. Commissioner,* 75 T.C. 497, 653, 1980 WL 4591 (1980). The following test determines whether a civil penalty is a "fine or similar penalty" under section 162(f):

> If a civil penalty is imposed for purposes of enforcing the law and as punishment for the violation thereof, [the payment is not deductible]. However, if the civil penalty is imposed to encourage prompt compliance with a requirement of the law, or as a remedial measure to compensate another

party for expenses incurred as a result of the violation, it [is deductible because it] does not serve the same purpose as a criminal fine and is not "similar" to a fine within the meaning of section 162(f).

*Southern Pac.*, 75 T.C. at 652; *see also Waldman v. Commissioner*, 88 T.C. 1384, 1987 WL 49332 (1987), *aff'd*, 850 F.2d 611 (9th Cir.1988); *Huff v. Commissioner*, 80 T.C. 804, 824, 1983 WL 14824 (1983); *Stephens v. Commissioner*, 905 F.2d 667, 673 (2d Cir.1990); *True v. United States*, 894 F.2d 1197, 1203–04 (10th Cir.1990); *Bailey v. Commissioner*, 756 F.2d 44, 46–47 (6th Cir. 1985). If the "payment ultimately serves each of these purposes, i.e., law enforcement (nondeductible) and compensation (deductible)," the tax court must "determine which purpose the payment was designed to serve." *Waldman*, 88 T.C. at 1387.

**B. Characterization and Purpose of the $940,000**

■ The Commissioner argues the government's actual loss, resulting from Stencel's fraudulent conduct from 1979 to 1984, was $1.56 million and the remaining portion ($940,000) of the $2.5 million settlement constitutes a payment of double damages under the FCA. The Commissioner argues a payment of double damages under the FCA is a "fine or similar penalty" under section 162(f) and, thus, nondeductible. Talley argues the disputed portion was intended to compensate the government for its actual losses and was not paid in compromise of the government's statutory right to double damages under the FCA. Alternatively, if intended as a payment of double damages, Talley argues the payment was intended only to compensate the government and was not intended as a punishment or deterrent.

Stencel faced potential liability under the FCA, the TINA, and for breach of contract. The parties agree that Stencel's liability under the TINA and for breach of contract would have been limited to compensating the government for its actual losses.

Stencel, however, faced liability exceeding the government's actual losses under the FCA. During the relevant period, Stencel faced a combined liability of "a civil penalty

of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action" if Stencel "knowingly" presented a false statement for payment. 31 U.S.C. § 3729 (1983).

The parties presented conflicting evidence as to the nature of the contested $940,000. The Commissioner presented the affidavit of William Kilberg, counsel for Talley during the settlement negotiations. In this affidavit, Kilberg states he advised Talley to settle the action on the assumption that the government's actual losses were $1.56 million and Talley agreed to settle. He states he informed Talley that the settlement would not be limited to the "$1.56 million as the estimated amount of the Government's actual losses" because, if the case went to trial, the government "would be entitled under the FCA to automatically recover double the amount of its actual damages" and because the government would have to immediately pay Stencel's outstanding invoices. In Talley's subsequent letter offering $2 million in settlement, Kilberg stated:

> All that Stencel seeks, thus, is assurance that its payment of $2,000,000.00 will in fact secure a release for all possible labor mischarging occurring during that period. Any other result would render the settlement incomplete and expose the Company to the threat of added liability for the same events *over and above the double damages that the proposed payment is designed to represent.* (Emphasis added).

The Commissioner also presented the declaration of Joyce Branda, counsel for the government during the settlement negotiations. In her declaration, Branda explains that Talley, in early settlement negotiations, agreed to pay double damages under the FCA. Branda states that, during settlement negotiations, "the core obligation was that Stencel would pay double the losses determined by audit to be owing...." She explains:

> I believed the $2.5 million should be accepted by the government in that the government was receiving its single damages of an estimated $1.56 million, plus $940,000

as a penalty or additional amount for the company's double damage liability.

In Branda's memorandum to her supervisor requesting approval of the settlement, she states:

> Thus, we think that the single[ ] figure of $1.56 million adequately compensates the government for its losses based upon a fair and defensible projection. We also believe that here, where Stencel has pled guilty to related criminal charges and where civil proceedings have not begun, it is premature to accept only an estimate and that assessment of a "penalty" (as a portion of our double damages and/or forfeitures) is appropriate. A settlement of $2—2.5 million represents compensation for an estimate of losses plus assessment of a penalty.

Talley, however, argues the $940,000 was intended to compensate the government for any unknown losses. Talley points to Branda's statement in her memorandum that the estimate of actual loss for 1984 "is not exhaustive of all damages which may have been caused in 1984" and the 1984 figure was used to calculate the $1.56 million amount. In his affidavit, Kilberg also states that he believed the $1.56 million amount may not reflect all of the government's actual damages.

Based on this conflicting proof, there is a genuine issue of material fact as to the nature of the contested portion. If the $940,000 represents compensation to the government for its losses, the sum is deductible. If, however, the $940,000 represents a payment of double damages, it may not be deductible. If the $940,000 represents a payment of double damages, a further genuine issue of fact exists as to whether the parties intended the payment to compensate the government for its losses (deductible) or to punish or deter Talley and Stencel (nondeductible). *See Waldman*, 88 T.C. at 1387.

The double damage provision of the FCA has both compensatory and deterrence purposes. *See United States v. McLeod*, 721 F.2d 282, 285 (9th Cir.1983); *see also Mortgages, Inc. v. United States Dist. Court*, 934 F.2d 209, 213 (9th Cir.1991); *United States v. Northrop Corp.*, 59 F.3d 953, 965 (9th Cir. 1995). "[T]he double damages provision of

the [FCA] is meant not only to compensate the government fully but also to deter fraudulent claims from being filed against it." *McLeod*, 721 F.2d at 285. Congress chose the double damage provision " 'to make sure that the government would be made completely whole.' " *Id.* (quoting *United States v. Hess*, 317 U.S. 537, 551–52, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943)). At the same time, however, the double damage provision " 'maximizes the deterrent impact....' " *McLeod*, 721 F.2d at 285 (quoting *United States v. Bornstein*, 423 U.S. 303, 317, 96 S.Ct. 523, 531, 46 L.Ed.2d 514 (1976)).

Because the double damage provision has both compensatory and deterrence purposes, whether the portion is deductible depends upon the "purpose the [$940,000] payment was designed to serve." *Waldman*, 88 T.C. at 1387. As reflected by the evidence discussed above, the purpose of this payment is unclear at this stage of the proceedings.

Neither the characterization nor purpose of the payment is clarified by the settlement agreement. That agreement is ambiguous. The ambiguity may be resolved, however, by determining the intent of the parties. That intent presents a factual issue for the trier-of-fact. *See Laborers Health and Welfare Trust Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir.1983). Thus, a genuine issue of material fact exists as to the characterization and the purpose of the $940,000 portion of the settlement.

■ The tax court reasoned that the $940,000 portion was paid for compensatory purposes because (1) during settlement negotiations, the government "never suggested that it was attempting to exact a civil penalty from Stencel;" and (2) the settlement sum of $2.5 million was significantly lower than double the estimated amount of actual damages of $1.56 million. These reasons are not determinative.

■ The tax court's first reason assumes the government was required to characterize the payment. The government does not have this burden. The taxpayer has the burden to demonstrate "entitlement to a particular deduction." *Norgaard v. Commissioner*, 939 F.2d 874, 877 (9th Cir.1991). If evidence to establish a deduction is lacking,

the taxpayer, not the government, suffers the consequence.

■ Also, the fact that the contested portion is less than double the amount of actual damages does not necessarily mean it is a payment for compensatory purposes. Because the parties settled the action, the government may not have received the maximum amount of damages it conceivably could have recovered had it gone to trial. The government also was interested in quickly settling the case so that Stencel could continue to manufacture and repair the ejection seats.

■ The tax court also erred in relying on a double jeopardy analysis to support its conclusion that the $940,000 portion of the settlement was deductible as compensation. The tax court reasoned that because the payment would not be "punishment" in the context of double jeopardy, it had to be "compensation" and not a "fine or similar penalty" under section 162(f). This does not necessarily follow.

■ Under the Double Jeopardy Clause, civil penalties generally are considered "to do no more than make the Government whole...." *United States v. Halper,* 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989); *see also Hess,* 317 U.S. at 551–52, 63 S.Ct. at 388 (double damages were "chosen to make sure that the government would be made completely whole"). A civil penalty may constitute a "second punishment" if the penalty "bears no rational relation to the goal of compensating the Government for its loss...." *Halper,* 490 U.S. at 449, 109 S.Ct. at 1892.

The standards that govern whether imposition of a civil penalty violates the Double Jeopardy Clause are not the same as the standards for determining whether an amount paid to a government is a fine or similar penalty, the deduction of which is barred by section 162(f). Section 162(f) reflects an entirely different policy—to prohibit the deduction of expenses the allowance of which would frustrate a sharply defined pub-

lic policy proscribing a particular type of conduct. *See Tank Truck Rentals v. Commissioner,* 356 U.S. 30, 33–34, 78 S.Ct. 507, 509–10, 2 L.Ed.2d 562 (1958); *True,* 894 F.2d at 1202–03. That the double damages portion of the penalty imposed by the FCA does not constitute criminal "punishment" within the meaning of the Double Jeopardy Clause of the Constitution does not mean that such damages are not within the ambit of section 162(f). In short, whether a payment is deemed compensatory for double jeopardy purposes does not determine whether the payment is deductible under the Tax Code. *Cf. In re Commonwealth Cos.,* 913 F.2d 518, 526 (8th Cir.1990) (concluding Court in *Halper* did not invalidate holdings that FCA serves both compensatory and deterrent purposes).

## CONCLUSION

A genuine issue of material fact exists as to the characterization and purpose of the $940,000 contested portion of the settlement. Summary judgment was inappropriate. We remand this case to the tax court for further proceedings consistent with this opinion.

REVERSED and REMANDED.