894 F.2d 1511
 58 USLW 2528
 UNITED STATES of America, Plaintiff-Appellant,
v.
ONE SINGLE FAMILY RESIDENCE WITH OUT BUILDINGS LOCATED AT
15621 S.W. 209 th AVENUE, MIAMI, FLORIDA,
Defendant-Appellee.
 No. 88-5861.
 United States Court of Appeals,
Eleventh Circuit.
 March 1, 1990.
 
 Guy W. Harrison, Lynne W. Lamprecht, Linda Collins Hertz, Asst. U.S. Attys., Jeanne M. Mullenhoff, Miami, Fla., for plaintiff-appellant.
 Joaquin Perez, Charles White, Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and EDMONDSON, Circuit Judges and YOUNG*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 This case presents a question of first impression in our circuit: when the United States seeks forfeiture under 21 U.S.C. section 881(a)(7) of real property used by its owner to facilitate a controlled substance transaction, and the property is held by the entireties with an innocent spouse whose interest Congress has expressly exempted from forfeiture, what becomes forfeitable under the statute? Because we see no way for the government to obtain a meaningful share in an entireties property without forfeiting some part of the innocent spouse's interest, as long as the spouses remain married to each other and do nothing to terminate the entireties estate, we hold that none of the property can be forfeited to the United States. We therefore AFFIRM the district court's decision denying the government's suit for forfeiture.
 
 FACTS
 
 2
 Carlomilton and Ibel Aguilera own property in Miami, Florida, as tenants by the entireties. The Aguileras bought the land in 1981 and with the help of friends and family members built a house for themselves and their daughter, into which house they moved in 1985. On February 20 and 21, 1986, Carlomilton Aguilera negotiated and conducted a cocaine sale to undercover DEA operatives on this property. He was arrested immediately and later convicted for trafficking in cocaine.
 
 
 3
 In June 1986, the United States filed a complaint for forfeiture in rem of the Aguilera property pursuant to 21 U.S.C. section 881(a)(7) which "requires the forfeiture of any real property and improvements thereon when there is probable cause to believe that the property was used to facilitate a violation of 21 U.S.C. Section 802, et seq., punishable by more than one year's imprisonment." United States v. One Single Family Residence, 699 F.Supp. 1531, 1534 (S.D.Fla.1988). Ibel Aguilera entered the forfeiture proceeding as a claimant to protect her interest in the property as the second clause of 881(a)(7) expressly excepts the interest of an innocent owner from forfeiture.
 
 
 4
 After reviewing the evidence introduced at trial and the record of the case as well as evaluating the credibility, demeanor, and interests of the witnesses who testified, the district court found Ibel Aguilera to have no knowledge or suspicion of her husband's drug trafficking or his use of their home to facilitate deals. The court further found that she had made a legally sufficient claim of innocent ownership that entitled her to a return of her interest in the property. In determining what interest would be returned to Mrs. Aguilera, the court first decided that it did not need to create a rule of federal common law and that state property law would decide the issue. Because under Florida law, an entireties estate cannot be forfeited due to the independent criminal conduct of one spouse when the other spouse has not participated in and has no knowledge of the crime, the district court held that the property was not subject to forfeiture. The government in its appeal charges the district court with error in ruling that the United States could not acquire one-half of an entireties property when one spouse has acted in a way that subjects the property to forfeiture and in not adopting a uniform rule of decision superseding state property law that would permit the government to obtain one-half of the entireties estate by forfeiture.
 
 STANDARD OF REVIEW
 
 5
 The government in its brief, while not acceding to the district court's findings of fact, recognized the "difficulty inherent in attempting to reverse the district court on findings of fact" and directed the body of its argument toward the district court's conclusions of law. Appellant's Brief at 5-6 n. 1. The government chose wisely, as we reverse factual findings only upon discovery of clear error by the district court, and on review of this record, we do not have "the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); Fed.R.Civ.P. 52(a). We thus treat this case as one involving an innocent owner, as the district court found, and independently review that court's conclusions of law. See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).
 
 DISCUSSION
 
 6
 The crux of this case is the forfeiture statute itself and how it ought to be interpreted. Section 881(a)(7) of Title 21 provides:
 
 
 7
 The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 8
 All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 9
 21 U.S.C.A. Sec. 881(a)(7) (West Supp.1989).
 
 
 10
 The language of section 881(a)(7) reflects two interrelated aims of Congress: to punish criminals while ensuring that innocent persons are not penalized for their unwitting association with wrongdoers. Section 881(a)(7) was a very small part of Title III of the Comprehensive Crime Control Act of 1984, the goal of which title was
 
 
 11
 to enhance the use of forfeiture ... as a law enforcement tool in combatting two of the most serious crime problems facing the country: racketeering and drug trafficking.
 
 
 12
 ....
 
 
 13
 ... This bill is intended to eliminate the [federal] statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies.
 
 
 14
 S.Rep. No. 225, 98th Cong., 2d Sess. 191, 192, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3374, 3375. But, even as Congress escalated its offense in the ongoing "war against drugs" by expanding the scope of property subject to civil forfeiture, it coupled with the forfeiture a proviso, taken verbatim from section 881(a)(6),[1] protecting innocent owners. Explaining the aim of the innocent-owner exception, Congress stated:
 
 
 15
 [I]t should be pointed out that no property would be forfeited under the Senate amendment to the extent of the interest of any innocent owner of such property. The term "owner" should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized. Specifically the property would not be subject to forfeiture unless the owner of such property knew or consented to the fact that [the property was used for or traceable to illegal drug activities].
 
 
 16
 Joint Explanatory Statement of Titles I & II, 124 Cong.Rec. S17647, reprinted in 1978 U.S.Code Cong. & Admin.News 9518, 9522.
 
 
 17
 Application of the statute appears simple. Upon Carlomilton Aguilera's transaction of a cocaine deal at his home, the property became "subject to forfeiture to the United States" except for whatever interest Ibel Aguilera, the innocent owner, had in the property. The difficulty lies in defining Ibel Aguilera's interest in the property which the government may not take.
 
 
 18
 Florida law provides a clear answer which supports the conclusion of the trial court. Ibel Aguilera holds the property at issue as a tenant by the entireties with her husband. To hold property by the entireties, Florida common law requires five "unities" to be present: marriage--the joint owners must be married to each other; title--the owners must both have title to the property; time--they both must have received title from the same conveyance; interest--they must have an equal interest in the whole of the property; and control or possession--they both must have the right to use the entire property. Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205, 206 (1945); Bechtel v. Estate of Bechtel, 330 So.2d 217, 219 (Fla.Dist.Ct.App.1976).
 
 
 19
 Should one of these unities never have existed or be destroyed, there is no entireties estate.[2] Andrews, 21 So.2d at 206; Bechtel, 330 So.2d at 219. As long as all the unities remain intact, however, each spouse's interest comprises the whole or entirety of the property and not a divisible part; the estate is inseverable. Quick v. Leatherman, 96 So.2d 136, 138 (Fla.1957); Andrews, 21 So.2d at 206; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727, 728 (1941). "[N]either spouse can sell, forfeit or encumber any part of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition." Parrish v. Swearington, 379 So.2d 185, 186 (Fla.Dist.Ct.App.1980) (per curiam). Creditors cannot levy on entireties property to satisfy the debt of an individual spouse. Meyer v. Faust, 83 So.2d 847, 848 (Fla.1955). The state cannot deem entireties property forfeit because of the unlawful conduct of one spouse acting alone. Smith v. Hindery, 454 So.2d 663, 664 (Fla.Dist.Ct.App.1984), overruled on other grounds in In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla.1986).
 
 
 20
 The easy answer to the 881(a)(7) riddle thus would seem to be that Ibel Aguilera's interest in the estate was that of a tenant by the entireties, that is, an indivisible right to own and occupy the entire property otherwise subject to forfeiture. Under the language of 881(a)(7), such property interest shall not be forfeited; therefore the district court decided this case correctly, albeit using different reasoning.
 
 
 21
 The government maintains, however, that the above does not accurately represent how 881(a)(7) operates. Instead, it focuses on section 881(h) which states that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section," restating the "relation back" doctrine of forfeiture first enunciated in United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890). The government argues that immediately upon Carlomilton Aguilera's transaction of a cocaine sale in his home, the government acquired his interest in the Aguilera property and replaced him as co-owner of the property with Ibel Aguilera. Under this theory, the unities of marriage, time and possession would be destroyed and the entireties estate would no longer exist, making Mrs. Aguilera and the government tenants in common. As a tenant in common, the government could partition and sell the property, per section 881(e)[3] and Florida law,[4] sharing the receipts with Mrs. Aguilera.
 
 
 22
 The government cites In re Metmor Fin., Inc., 819 F.2d 446 (4th Cir.1987), as support for its position that forfeiture should occur before calculation of the interest of the innocent owner. In Metmor, the government instituted forfeiture proceedings against a house, owned by a drug dealer but with a mortgage held by a lender found to be an innocent owner of an interest in the property. The government in Metmor argued that the lender's rights froze at the moment that the property became forfeitable, that is, when the criminal owner committed his crime, and thus the lender's non-forfeitable "innocent interest" included the principal outstanding and interest not paid up until that time. The government denied liability for any interest accrued between when the property became forfeitable and when the government finally would acquire the property and sell it. The Metmor court held that the government could not use the forfeiture statute and the relation-back provision to deprive the innocent owner of a piece of its non-forfeitable stake in the property, in that case the interest on the principal, or to obtain a greater holding than the criminal owner himself had had, that is, an unsecured, interest-free loan. Otherwise, "[s]uch a result would deprive Metmor of its stake in the forfeited property and would constitute a taking without due process.... The forfeiture cannot change the nature of Metmor's rights as an innocent mortgagee." Id. at 448. "We summarize our conclusions as follows. The government is statutorily authorized to seize and condemn property that constitutes illegal proceeds of narcotics transactions. However, to the extent that 'innocent' owners have a stake in such property, no forfeiture can occur." Id. at 451.
 
 
 23
 We agree with the reasoning of the Fourth Circuit in Metmor, but we do not see that the case supports the government's position. Rather, Metmor seems to stand for exactly the opposite proposition than that for which the government has cited it. Under Metmor, the government cannot deprive Ibel Aguilera of any interest she has in the property. The interest she has under Florida law is an undivided right of possession, title, and enjoyment of the whole property. To convert this right into a tenancy in common, where she has only the right to a portion of the property or a portion of the proceeds should the government pursue partition--which could not occur with an entireties estate--appears to us to be a taking without due process violating the Fifth Amendment of the federal Constitution. Conversely, as a tenant in common, the government would possess the right to freely alienate its half-interest of the property and the right to force partition on its co-tenant--a far greater interest than that possessed by Carlomilton Aguilera who could alienate and convey his interest only with the consent of and in concert with his wife.
 
 
 24
 Reading subsection (h) of section 881 in tandem with subsection (a), it becomes clear that the "right, title and interest" that vests in the United States upon commission of the unlawful act comprises only so much of the property as is "subject to forfeiture" under the appropriate division of subsection (a). The words of 881(a)(7) do not support the government's assertion that the innocent owner's interest amounts to whatever is left over after the government has effected forfeiture. Instead, the government obtains through forfeiture whatever interest remains in the property after the innocent owner's interest has been excepted. In this case, then, everything except Ibel Aguilera's interest is forfeitable under 881(a)(7). Unfortunately for the government, Mrs. Aguilera's interest encompasses all "right, title and interest" in the property as all three are indivisible between a husband and wife holding property by the entireties.[5] To forfeit some interest in the property to the government would penalize Mrs. Aguilera for the wrongdoing of her husband, in which she neither participated nor had any knowledge, and would take her property without due process or just compensation. Congress could not and clearly did not intend such a result when enacting 881(a)(7). As the Supreme Court noted, "[w]hen the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." United States v. United States Coin & Currency, 401 U.S. 715, 721-22, 91 S.Ct. 1041, 1044-45, 28 L.Ed.2d 434 (1971). In fact, Congress included the second clause of 881(a)(7), protecting innocent owners, to prevent the result which the government now seeks. Thus, using Florida law to define what property interest each of the Aguileras has, we find that no interest exists in the subject property which can be forfeited to the government at the present time.[6]
 
 
 25
 The United States further argues, however, that if Florida law will not permit the forfeiture of a one-half interest in the subject property, then federal law should preempt the state law in this case because the Florida law of entireties directly conflicts with the federal law of forfeiture and frustrates the underlying federal scheme to "deprive drug traffickers of the tools of their trade." Appellant's Brief at 27. The government asserts that the district court should have declined to apply state law and instead fashioned a uniform federal rule of decision that "the United States is entitled to forfeit a one-half interest in property owned by husband and wife where one spouse uses the property for narcotics trafficking." Id. at 26. We do not agree with this contention and find that the district court rightly used Florida state law in determining the property interests in this case.
 
 
 26
 The district court compared section 881(a)(7) with cases interpreting tax lien statutes, which cases uniformly hold that state law will define what types of interests are "property" which can be attached under federal law. See, e.g., Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Gurley, 415 F.2d 144 (5th Cir.1969) (dealing specifically with tax liens and tenancy by the entireties). The government has taken issue with this comparison. It asserts that the scope of the tax lien statutes, which give the United States in personam creditor's rights against a debtor, make an inapt analogy to section 881(a)(7), which gives the government an in rem claim directly against the property on which the violation of law took place. However, even if we reject the tax lien statute analogy, we can rely on many other Supreme Court pronouncements which make clear that the general background rule is that state law will govern property rights, even when the federal government or federal statutes are involved. See, e.g., United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966) (state family-property law must do "major damage" to "clear and substantial" federal interests before federal law will override state law); Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 378, 97 S.Ct. 582, 590, 50 L.Ed.2d 550 (1977) (property ownership governed by law of several states and not general federal law); Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155, 64 S.Ct. 474, 480, 88 L.Ed. 635 (1943) (resort to state statutes and decisions to "give meaning and content to federal statutes").
 
 
 27
 On the other hand, the Supreme Court also has stated on several occasions that federal law will preempt state law if Congress expressly provides for preemption, if the area of law is one of comprehensive federal regulation that leaves no room for state laws to supplement, if the state law affects a field of dominant federal interest precluding state laws on the same subject, or if the state law and the federal law are in actual conflict so that compliance with both is physically impossible or the state law obstructs the accomplishment of the full objectives of Congress. See, e.g., International Paper Co. v. Ouellette, 479 U.S. 481, 491-92, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 280-81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987); Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Additionally, even when federal regulation may leave room for state law to act in the interstices of the federal statutes, the federal courts must decide whether the state law is appropriate or whether federal common law should be created. United States v. Little Lake Misere Land Co., 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). "The Court in the past has been careful to state that, even assuming in general terms the appropriateness of 'borrowing' state law, specific aberrant or hostile state rules do not provide appropriate standards for federal law." Little Lake Misere, 412 U.S. at 595-96, 93 S.Ct. at 2398; see also North Dakota v. United States, 460 U.S. 300, 318-19, 103 S.Ct. 1095, 1105, 75 L.Ed.2d 77 (1983).
 
 
 28
 None of the preemption grounds affect the outcome in this case. Congress expressly preempted state law in the language of 21 U.S.C. section 853(a) (Supp.1984), created in the same act as section 881(a)(7), by providing for criminal forfeiture of property, "irrespective of any provision of State law," if that property was related to or involved in illegal drug transactions. Section 881 contains no similar express preemption. Nor is this an example of a field in which federal regulation or domination excludes all state law. In fact, in section 903 of the same title, Congress makes clear that it had no intent to occupy the field "unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." 21 U.S.C. Sec. 903 (1982). Finally, our decision is not based on Florida law that conflicts with the federal forfeiture statute.[7] We simply find that the federal law protects an innocent owner's interest, and when that innocent owner's interest comprises the whole of a property, nothing can be forfeited to the government. The conflict is not one of Florida law versus federal law. The dichotomy lies within the statute itself where Congress expresses both the desire to punish maximally the wrongdoer while completely preserving the rights and interests of the innocent. Florida law merely defines the interests of owners of property. This definition establishes the interest of the innocent spouse, Mrs. Aguilera.
 
 
 29
 Nor is the use of state law to define what interests may or may not be forfeited inappropriate in this case. True, the result in this case allows a drug trafficker to retain ownership, possession and control of his home and land, even though the goal of enacting 881(a)(7) was to reach such property and forfeit it to the government. In one sense, this consequence might be perceived as resulting from the improper application of an "aberrant or hostile state rule[ ]," creating an "obstacle to the accomplishment" of Congress' purpose, interfering with the "methods by which the federal statute was designed to reach [its] goal," and producing an outcome inconsistent with federal objectives. See Little Lake Misere, 412 U.S. at 596, 93 S.Ct. at 2398; Ouellette, 479 U.S. at 494, 107 S.Ct. at 812; Maryland v. Louisiana, 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981).
 
 
 30
 We nevertheless cannot escape our conviction that Congress equally intended full protection of the interests of innocent owners. We could adopt a rule, superseding all contrary state laws, that where a property owned by a husband and wife is used by one spouse for narcotics trafficking without the knowledge or consent of the other spouse, the United States gets a one-half interest in the property through forfeiture under section 881(a)(7). This rule would have the benefit of ensuring that all drug traffickers similarly situated would get uniform punishment, losing all interest in the property, while their spouses, if innocent, retain a half-interest in the property or half the proceeds of the sale of the property. Punishment, however, is only one aspect of section 881(a)(7).
 
 
 31
 The flip side of the government's proposed rule is that while innocent owners in states where spouses possess divisible interests in the property will not suffer,[8] in states such as Florida, where the innocent spouses previously had the right to title, possession and enjoyment of the whole property, those spouses will be deprived of one-half of their interest without any wrongdoing on their part. In essence, the proposed uniform rule would convert section 881(a)(7) into a statute forfeiting all real property used to facilitate illegal drug transactions, "except that no property shall be forfeited under this paragraph, to the extent of an interest of an [innocent] owner [unless the interest of said innocent owner exceeds one-half of the property subject to forfeiture, in which case such excess shall also be subject to forfeiture]." Such a hypothetical federal rule would be as inimical to the Congressional goal of protecting innocent owners, as much of an obstacle to achieving the full purposes of Congress, and as inconsistent in result in states recognizing tenancy by the entireties as adopting state law to define property would be to the Congressional intent to take property used in drug deals away from drug dealers. In creating such a federal rule we would substitute one form of frustration of Congressional purpose and nonuniformity of result among the several states for another, one which would have the added detriment of blatantly disregarding the explicit terms of section 881(a)(7) preserving all property interests of innocent owners from forfeiture.
 
 
 32
 Finally, we believe that a federal rule is unnecessary. The government concedes that only fifteen states recognize tenancy by the entireties as an indivisible interest between spouses regardless of the circumstances.[9] In those states, only some of the drug traffickers will be married. Of those married, only some will hold property by the entireties.[10] Of those holding property by the entireties, only some will conduct drug transactions involving their property and subjecting it to forfeiture. Of that group, only a few will have spouses who can demonstrate by a preponderance of evidence that they had no involvement in, knowledge of, and gave no consent to the wrongdoers' actions. In sum, only in a very limited number of cases will protection of the innocent spouse's interest prevent the government from taking the guilty spouse's property through forfeiture. In the usual case, the application of state property law to define what is and is not forfeitable will not adversely affect the federal interest in effecting forfeiture. As the Supreme Court said in United States v. Yazell:
 
 
 33
 [T]his Court, in the absence of specific congressional action, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here. Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements. They should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.
 
 
 34
 382 U.S. at 352, 86 S.Ct. at 506. We believe that the clear and substantial interests of the United States can be served consistently with respect for state family-property laws and therefore approve the application of Florida law to this case.
 
 
 35
 For the aforementioned reasons, we AFFIRM the decision of the district court.
 
 
 
 *
 Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 See S.Rep. No. 225, 98th Cong., 2d Sess. 215, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3398
 
 
 [2]
 A tenancy by the entireties can terminate in a variety of ways. The instrument creating the estate may have granted an interest limited in time; thus when the title passes, the entireties estate ceases to exist. Matthews v. McCain, 125 Fla. 840, 170 So. 323 (1936). One spouse can transfer his/her interest to the other spouse so that the donee spouse holds the property in fee simple. Hunt v. Covington, 145 Fla. 706, 200 So. 76 (1941). The spouses can reconvey the property to themselves as tenants in common. Pace v. Woods, 177 So.2d 779 (Fla.Dist.Ct.App.1965). The death of a spouse destroys the entirety and the surviving spouse becomes the owner in fee simple. Wilson v. Florida Nat. Bank & Trust Co., 64 So.2d 309, 312 (Fla.1953); Knapp v. Fredericksen, 148 Fla. 311, 4 So.2d 251, 252 (1941). Dissolution of marriage ends the marital unity and the ex-spouses become tenants in common. Fla.Stat. Sec. 689.15 (1987). Finally, should one spouse murder the other, the surviving spouse becomes a tenant in common with the deceased spouse's heirs. Hogan v. Martin, 52 So.2d 806 (Fla.1951); Ashwood v. Patterson, 49 So.2d 848 (Fla.1951); cf. Eichman v. Paton, 393 So.2d 655 (Fla.Dist.Ct.App.1981) (spouses in process of divorcing; husband attempts to kill wife but only renders her incompetent to do anything, including completing the divorce proceedings; court held that equity demanded that they be deemed tenants in common as if the divorce had been entered, even though all the unities were still present, so that husband could not gain from wife predeceasing him)
 
 
 [3]
 Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may--
 ....
 sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public.
 21 U.S.C. Sec. 881(e)(1)(B) (Supp.1987)
 
 
 [4]
 See, e.g., Wescott v. Wescott, 487 So.2d 1099 (Fla.Dist.Ct.App.), review denied, 494 So.2d 1154 (Fla.1986)
 
 
 [5]
 This case thus differs from the facts in United States v. South 23.19 Acres, 694 F.Supp. 1252 (E.D.La.1988), in which case the community property became subject to forfeiture and the court opined that forfeiture could take place even if state law would not permit the division of community property to satisfy a forfeiture. First, the Louisiana district court's statement may have been pure dictum because Louisiana law in fact did allow for division and forfeiture of community property in such a case. Second, in Louisiana, "each spouse owns an undivided one-half interest in the community property of the marriage." The innocent spouse's interest would remain intact even if the community property were sold to satisfy the government's entitlement to the guilty spouse's interest. Thus the district court in that case was dealing with a completely distinguishable situation when it wrote that "[s]tate family and property laws cannot supersede and interfere with the uniform application of federal forfeiture law." Id. at 1254. Here we do not say that Mr. Aguilera's interest cannot be forfeited because Florida law prohibits forfeiture of entireties property as a result of the illegal act of one spouse. Rather we hold that Mrs. Aguilera's interest, protected from forfeiture by federal statute, encompasses the whole property and nothing remains to forfeit to the United States
 
 
 [6]
 Nothing would prevent the government from attempting to execute or levy on its interest should the entireties estate be altered by changes in circumstances or by court order. That is, we do not rule out the possibility that if the United States filed a lis pendens against the property, the government might acquire in a later forfeiture proceeding Mr. Aguilera's interest in the property should he divorce his spouse, should Mrs. Aguilera predecease him, or should their interests be transmuted into some divisible form by their actions or by law. In such case, their interests would become distinct and separable so that forfeiture of his interest in the property would not affect her rights
 
 
 [7]
 We reiterate that we do not bar forfeiture of a one-half interest to the government in this case merely because Florida law does not permit forfeiture of any interest in entireties property based on the wrongdoing of one spouse acting unilaterally. Clearly compliance with that state law and federal law is impossible; respecting that state law would obstruct the execution of Congressional objectives. The federal law of forfeiture would prevail over the Florida law prohibiting forfeiture in such circumstances
 
 
 [8]
 Assuming that most or all innocent co-owners will have a one-half interest in the property. Should the innocent owner actually have a right to more than one-half of the property, the uniform rule would cause the improper forfeiture of "excepted" property to the government
 
 
 [9]
 The states enumerated by the government include Delaware, the District of Columbia, Florida, Hawaii, Indiana, Maryland, Michigan, Mississippi, Missouri, North Carolina, Pennsylvania, Rhode Island, Virginia, Vermont and Wyoming. Appellant's Brief at 30-31
 
 
 [10]
 We further note that a drug trafficker may not hide property otherwise subject to forfeiture by putting it in the name of himself/herself and his/her unwitting spouse. The property becomes subject to forfeiture upon the commission of the crime and title vests immediately in the United States, so that the trafficker has nothing to transfer to the innocent spouse. Similarly, if a drug trafficker made a sale of drugs and used the proceeds, which would be forfeitable under section 881(a)(6), to purchase a piece of real estate, to which s/he and his/her spouse took title in the entireties, since the proceeds became forfeitable immediately upon the sale of drugs and title to the money vested in the government, exchanging the money for property would not create a protected entireties estate. The trafficker ceased to hold title to the money before the property was purchased and could not divest the government of its interest by a subsequent exchange