**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL OF REAL ESTATE LOCATED AT 9818 S.W. 94 TERRACE, MIAMI, DADE COUNTY, FLORIDA, including all appurtenances thereto and all improvements thereon, Defendant.**

**No. 90–0767–Civ.**

United States District Court,
S.D. Florida.

Feb. 14, 1992.

Veronica Harrell–James, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Robert Targ, Miami, Fla., for defendant.

### FINAL JUDGMENT OF FORFEITURE INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, Senior District Judge.

This is an action brought by the United States of America for forfeiture of a certain parcel of real estate which includes a single family residence, located at 9818 S.W. 94th Terrace, Miami, Florida ("9818 residence"). The Government seeks forfeiture of this property pursuant to 21 U.S.C. Section 881(a)(7).[1]

The case was tried non-jury by this Court on January 13, 14, and 15, 1992. The Court has considered all of the testimony and evidence presented at the trial, as well as the entire record in this matter, and being otherwise advised in the premises, herein enters its findings of fact and conclusions of law.

*Findings of Fact*

1. The legal description of the defendant real property sought to be forfeited is as follows:

> Lot 6, in Block 1, of West Cherry Grove, according to the plat thereof, recorded in Plat Book 95, at page 89, of the Public Records of Dade County, Florida.

2. The defendant real property is jointly titled in the names of the David Mendez and Magdalena Mendez, who are married and hold title to the property jointly as tenants by the entirety under the laws of the State of Florida.

3. David and Magdalena Mendez are the only claimants in this action.[2]

---

1. The Government initially also sought the forfeiture of a 1988 Cadillac Classic Seville owned by the Claimants in consolidated case number 90–2612–CIV–ARONOVITZ. This case was dis-missed by the Court, ore tenus, upon stipulation of the parties at trial.

2. At trial, the Court, ore tenus, dismissed without prejudice the claim of Allstate Carpet Clean-

4. The Claimants purchased the defendant real property on or about September 14, 1989. The purchase price of the property was $128,000, of which the Claimants made a down payment of $47,087.73 to satisfy a prior mortgage on the property. The Claimants paid the balance by securing a mortgage with American Savings and Loan Association in the amount of $83,200.

5. Because the sale of their prior residence at 6720 S.W. 50th Terrace, Miami, Florida ("6720 residence"), had not yet closed, the Claimants borrowed $37,000 from family members to help make the down payment on the 9818 residence, and used $10,000 from their own savings account.

6. There was no evidence, nor does the Government contend, that the defendant property was purchased with proceeds from drug trafficking activities. Nor was the evidence persuasive that the Claimants were enjoying a lifestyle inconsistent with their lawful means and explained income.

7. On or about October 23, 1989, an individual named Christian Cabrera met with individuals named Felix Doval, Michael Keister, and Thomas Scarantino, an undercover Drug Enforcement Administration (DEA) agent. During that meeting, they discussed arrangements for agent Scarantino to purchase six (6) kilo packages of cocaine on the following day.

8. On or about October 24, 1989, Cabrera and Jose ("Pepe") Maestre embarked on a search for a source of cocaine for the aforementioned transaction. They visited several potential sources. Throughout this day, Cabrera was beeped numerous times by Felix Doval, who was anxiously waiting at his apartment for word that a source for the cocaine had been found.

9. Cabrera and Maestre ultimately went to the 6720 residence to visit David Mendez. Magdalena Mendez greeted Maestre at the door (Cabrera was waiting in the car), and informed them that David Mendez was at the 9818 residence doing some carpentry work.

10. The two men proceeded to the 9818 residence, where they met with David Mendez and helped him load carpeting onto his truck. Thereafter, they followed him back to the 6720 residence. David Mendez testified at trial that he returned to the 6720 residence to retrieve a hammer and chisel from the tool shed in the backyard behind his home.

11. David Mendez retrieved one (1) kilo package of cocaine from the tool shed, brought it into the kitchen, and placed it on the kitchen counter for Maestre and Cabrera to inspect. It was Cabrera's understanding that upon payment for this kilo, David Mendez would provide them with five more kilos of cocaine.

12. David Mendez, Cabrera, and Maestre returned to the defendant 9818 residence, where the kilo of cocaine changed hands, and from where Cabrera called Doval to inform him that he had obtained a kilo of cocaine.

13. Thereafter, Cabrera and Maestre transported the cocaine to Doval's apartment located at 7430 S.W. 59th Court. Cabrera went up to Doval's apartment to deliver the cocaine to agent Scarantino and to receive payment, while Maestre waited downstairs in the car.

14. Upon making the delivery, Cabrera and Doval were arrested. Following his arrest, Cabrera made a statement to the DEA implicating David Mendez as the source of the cocaine transacted on October 24, 1989. Maestre fled the scene before the DEA agents were made aware of Maestre's involvement in the cocaine transaction.

15. As a result of their activities on or about October 24, 1989, Cabrera and Doval were found guilty of illegal drug trafficking. Cabrera was sentenced to fifteen years in prison under the federal sentencing guidelines.

16. David Mendez was involved in the narcotics activities which took place on or

ing Inc. as having been raised in an improper forum. Said dismissal was reduced to writing

by Order of this Court dated January 31, 1992.

about October 24, 1989. The Court disbelieves David Mendez's testimony that he, an experienced cabinetmaker who carries a variety of tools in his pickup truck, returned to the 6720 residence, with Cabrera and Maestre in a separate car, simply to retrieve a hammer and chisel from the tool shed.

17. The Court believes Cabrera's trial testimony, which comports with earlier statements he made to the DEA, that David Mendez was the source of the cocaine transaction that took place on October 24, 1989.

18. The Mendezes currently live with their two children at the home of Magdalena Mendez's parents in Hollywood, Florida.

*Conclusions of Law*

A. 21 U.S.C. Section 881(a)(7) requires the forfeiture of any real property and improvements thereon when there is probable cause to believe that the property was used to facilitate a violation of 21 U.S.C. Section 802 *et seq.*, punishable by more than one year's imprisonment.

B. "Probable cause" for forfeiture is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." *United States v. A Single Family Residence*, 803 F.2d 625, 628 (11th Cir.1986).

■ C. The evidence at trial established probable cause that the subject real property was used to facilitate a prohibited narcotics transaction. The trial testimony of Christian Cabrera, viewed in conjunction with the statements he made to the DEA after arrest, establishes a reasonable ground for belief that the property was used to facilitate said transaction.

■ D. Once probable cause is established, the burden of proof shifts to the claimant to demonstrate by a preponderance of the evidence that he or she is an "innocent owner." A claimant may carry this burden by showing that he or she did

not know of the property's connection to drug trafficking, and that he or she took every reasonable precaution to prevent the property's use in drug trafficking. *See A Single Family Residence*, 803 F.2d at 629.

■ E. Each spouse's interest in a tenancy by the entirety comprises the whole or entirety of property and not a divisible part under Florida law. *United States v. A Single Family Residence*, 894 F.2d 1511 (11th Cir.1990); *Quick v. Leatherman*, 96 So.2d 136, 138 (Fla.1957). No portion of property held in tenancy by the entirety by an innocent owner and her spouse who was involved in a narcotics transaction can be forfeited. *A Single Family Residence*, 894 F.2d at 1515.

F. Since this Court has found that David Mendez was involved in the narcotics activities of October 24, 1989, he plainly does not qualify as an "innocent owner" under 881(a)(7).

G. The more difficult issue facing this Court is whether Magdalena Mendez has carried her burden of proof on the innocent owner defense. If so, the property may not be forfeitable under Section 881(a)(7).

*Innocent Ownership—Magdalena Mendez*

■ At trial, Magdalena Mendez testified that after greeting Maestre at the door of the 6720 residence on October 24, 1989, and informing him that her husband was pulling up the carpeting at the 9818 residence, she left with her two children to "run errands" for the day. These errands purportedly included a pick-up at the dry cleaners, a jaunt through the car wash, a fill-up at the gas station, and a break for lunch. She further testified that she arrived back at the 6720 residence some time in the late afternoon/early evening.

Magdalena Mendez testified that she never saw Cabrera on that day,[3] that she had no knowledge of a drug transaction, that she did not see a package of cocaine, and that she did had no idea that there was

---

**3.** Mrs. Mendez acknowledged that when she greeted Jose Maestre at the door of her 6720 residence on October 24, 1989, she saw a person, who she later learned was Christian Cabrera, waiting in a car in her driveway.

cocaine in the tool shed.[4] In fact, it was the position of both David and Magdalena Mendez that there was no narcotics transaction in their residence on October 24, 1989. Accordingly, she argues that she had no knowledge of narcotics transaction and therefore is entitled to the protection afforded an innocent owner under Section 881(a)(7). The testimony of Magdalena Mendez was the only direct evidence of her lack of knowledge.

By contrast, Christian Cabrera testified that while he and Maestre were inspecting the kilo of cocaine in the kitchen of the 6720 residence on that day, Magdalena Mendez was at the residence and, in fact, walked into the kitchen during the inspection. Based on this direct testimony only, the Government argues that Magdalena Mendez knew of the narcotics transaction and did nothing to prevent it from occurring.

It is important to note that the Government is "not required to produce direct evidence of knowledge of a spouse in order to prove knowing acquiescence in criminal activity." *U.S. v. One Single Family Residence*, 699 F.Supp. 1531, 1538 (S.D.Fla. 1988), *affirmed*, 894 F.2d 1511 (11th Cir. 1990). In many instances, "the nature and circumstances of the marital relationship" may give rise to an inference of knowledge of the spouse claiming innocent ownership. Furthermore, it is the exception, rather than the rule, that a testifying spouse will be able to persuade the Court, through credibility as well as through corroborating evidence, that the activities of the other spouse were unknown. *One Single Family Residence*, 699 F.Supp. at 1538.

This Court finds that the testimony of Magdalena Mendez does not satisfy her burden of proof, by a preponderance of the evidence that she did not know that her husband was engaged in a narcotics transaction at her residence. The evidence adduced at trial simply does not support the claimants' position that Magdalena Mendez was unaware of her husband's activities.

The Court makes this finding based on the lack of corroborating evidence, the nature of the claimants' relationship, the demeanor of the witnesses on the stand, and their interest in the action.

This Court is mindful that in some circumstances, as here, where the evidence of both knowledge and lack of knowledge is so scarce, the allocation of the burden of proof to the innocent owner can lead to unusually harsh results. The forfeiture of a person's home is as harsh a result, in a civil case, as one can envision. Moreover, the burden on the innocent spouse is particularly severe because of the inherent difficulty in proving lack of knowledge.

Nevertheless, this Court has previously held that the "stringent burden imposed on innocent owners to demonstrate their lack of knowledge of criminal acts committed on their property serves to alleviate concern that recognition of state-created tenancies by the entirety will work as an inequitable shield for those who traffic in narcotics." *U.S. v. One Single Family Residence*, 699 F.Supp. 1531, 1538 (S.D.Fla.1988), *affirmed*, 894 F.2d 1511 (11th Cir.1990). Claimant Magdalena Mendez has simply not met the imposing burden of demonstrating lack of knowledge by a preponderance of the evidence.

It is therefore ORDERED AND ADJUDGED that the Government's suit for forfeiture is hereby GRANTED. Based thereon, the defendant property is hereby forfeited to the United States of America.

DONE AND ORDERED.

---

**4.** Mrs. Mendez testified that she rarely had occasion to even open the tool shed because there was nothing in there of use to her.