23 F.3d 359
 63 USLW 2036
 UNITED STATES of America, Plaintiff-Appellee, Counter-Defendant,
v.
LOT 5, FOX GROVE, ALACHUA COUNTY, FLORIDA, Defendant,
Savanah Wims, Claimant-Appellant,
Eng, Denman & Assoc., Inc., Claimant-Counter-Claimant,
Manufacturers & Traders Trust Co., Claimant-Counter-Claimant.
 No. 93-2051.
 United States Court of Appeals,
Eleventh Circuit.
 June 22, 1994.
 
 Robert S. Griscti, Gainesville, FL, for appellant.
 Robert D. Stinson, Asst. U.S. Atty., Tallahassee, FL, for appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and PAINE*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 Savanah Wims ("Claimant") appeals the district court's civil forfeiture order of her residential property. Upon review, we affirm.
 
 I. STATEMENT OF THE CASE
 
 2
 In April 1992, the United States filed a forfeiture complaint against Claimant's residence, described as "Lot Five, Fox Grove, Alachua County, Florida," pursuant to 21 U.S.C.A. Sec. 881(a)(7) (West Supp.1994). The government alleged that the property was used to commit, or facilitate the commission of, federal narcotics law violations. Claimant filed a timely claim to the property. Among her defenses, she pleaded: (1) innocent ownership under Sec. 881(a)(7) and (2) homestead protection under Article X, Sec. 4 of the Florida Constitution.
 
 
 3
 At a pretrial conference in January 1993, the court denied Claimant's contention that the Florida homestead provision prevents federal forfeiture of the property. After jury selection, the court held a bifurcated probable cause hearing in which the government presented two witnesses, Detective James Brown of the Alachua County Sheriff's Office and Special Agent Michael Lee of the Drug Enforcement Agency.
 
 
 4
 During Detective Brown's investigation of the drug conspiracy underlying the forfeiture, he interviewed Tim Wims, one of Claimant's stepsons, concerning Claimant's role in the conspiracy. Tim Wims stated that (1) he had left $25,000 from drug sales with Claimant at the forfeited property; (2) he drew down on that amount over time; (3) Claimant knew her husband, Roosevelt Wims, and stepsons dealt drugs; and (4) he overheard conversations at the forfeited property between Roosevelt Wims and Pablo Cruz, a drug supplier. Tim Wims also reported that Claimant had held and counted drug money that Otis Brown, another stepson, had delivered to her residence. Detective Brown confirmed this story through interviews with Otis Brown and Deon Wims, another of Claimant's stepsons.
 
 
 5
 Additionally, Detective Brown testified that Cruz told him that he sold Roosevelt Wims at least one hundred kilograms of cocaine during the course of the conspiracy and that he and Roosevelt Wims discussed drug transactions while at the property. Detective Brown further testified that Otis Brown told him that he and Roosevelt Wims had stored a truck containing two kilograms of cocaine in the forfeited property's garage before transferring the cocaine to Claimant's automobile, which was later driven to J.C. Wims, Roosevelt Wims' brother, who distributed drugs in New York.[1] Western Union records showed that J.C. Wims transferred to Claimant several large sums of money.
 
 
 6
 Shortly after beginning her case, Claimant sought and was granted a recess to speak with her counsel. Claimant then stipulated to probable cause, stating that the government told her it intended to indict her for the criminal conduct underlying the forfeiture action. Claimant therefore requested a one-day continuance, which was granted; however, the court denied Claimant's motion to dismiss the case based on the homestead provision and on the Self-Incrimination and Due Process Clauses of the Fifth Amendment to the United States Constitution. The next morning, Claimant moved for a stay of the forfeiture case until resolution of the expected criminal prosecution, which, along with Claimant's renewed motion to dismiss, was denied. Rather than presenting a defense, Claimant rested. As Claimant presented no evidence contradicting the government's evidence of probable cause, the court ordered the forfeiture of the residence.
 
 II. DISCUSSION
 
 7
 Claimant raises two issues on appeal: (1) whether the court erred by ruling that Sec. 881(a)(7) preempts the homestead provision of the Florida Constitution; and (2) whether the court abused its discretion by not staying the civil forfeiture trial pending resolution of the related criminal prosecution of Claimant. We review de novo the trial court's conclusion that the federal civil forfeiture statute preempts Florida homestead law. United States v. 15621 S.W. 209th Ave., 894 F.2d 1511, 1513 (11th Cir.1990) (conclusions of law are independently reviewed). We review the trial court's decision not to stay the civil forfeiture proceeding while a related criminal matter was contemplated for an abuse of discretion. See United States v. 566 Hendrickson Blvd., 986 F.2d 990, 996 (6th Cir.1993); United States v. 6250 Ledge Rd., 943 F.2d 721, 729 n. 9 (7th Cir.1991); United States v. Little Al, 712 F.2d 133, 135 (5th Cir.1983).
 
 A. The Supremacy Clause
 
 8
 Claimant first contends that the district court erred by concluding that federal civil forfeiture law preempts Florida's constitutional homestead right. Claimant asserts that this ruling is inconsistent with the United States Supreme Court's decision in Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) and that we must therefore reverse the court's Order of Forfeiture. We disagree.
 
 
 9
 The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Consequently, Congress has the constitutional power to preempt state law. Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). However, congressional authority is not unlimited. A federal statute does not supersede state law unless that is the clear and whole purpose of Congress. Cipollone v. Liggett Group, Inc., --- U.S. ----, ----, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Congress' intent may be expressly stated in the language of the statute or implicitly contained in its structure and purpose. Id. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field" that courts can reasonably infer congressional intent to preempt the state law. Id. (citation omitted). See 15621 S.W. 209th Ave., 894 F.2d at 1517 (noting that federal law preempts state law "if the state law and the federal law are in actual conflict so that compliance with both is physically impossible or the state law obstructs the accomplishment of the full objectives of Congress.").
 
 
 10
 Contrary to Claimant's contention that Gregory announces a broad, new constitutional rule, the Gregory Court did not generally change traditional preemption law analysis. In Gregory, the Supreme Court considered whether the Age Discrimination in Employment Act ("ADEA")[2] preempted a clause of the Missouri Constitution requiring mandatory retirement of judges more than seventy years old. The Supreme Court held that the ADEA did not override the state constitutional provision because the ADEA did not contain an express statement of preemption. 501 U.S. at ----, 111 S.Ct. at 2406. The Supreme Court stressed the importance of our system of dual sovereignty, id. at ----, 111 S.Ct. at 2399, but concluded that the Supremacy Clause tips the balance of power toward the federal government. Id. at ----, 111 S.Ct. at 2400.
 
 
 11
 Gregory 's scope is far more restrictive than Claimant would have us find. Because the Missouri constitutional provision concerning the composition of the state's judicial branch went to the very essence of state sovereignty and political determination,[3] the Supreme Court adopted a "plain statement" preemption rule: Congress must make its intention to preempt unmistakably clear in the language of the statute. Id. at ----, 111 S.Ct. at 2401. But the Gregory plain statement preemption rule is limited to federal laws impacting a state's self-identification as a sovereignty. See Reich v. New York, 3 F.3d 581, 589-90 (2d Cir.1993) (refusing to interpret Gregory to resurrect undue deference to State's political decisions), cert. denied, --- U.S. ----, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); EEOC v. Massachusetts, 987 F.2d 64, 69 (1st Cir.1993) (Gregory made "unequivocally clear ... the narrowness of its holding"). In this case, a conclusion that Florida's homestead protection provision is preempted by federal civil forfeiture law would not affect Florida's sovereignty because Florida's homestead protection is a substantive policy choice, not a means of sovereign definition. Accordingly, Gregory 's holding is inapposite to the case at bar, and our sole inquiry is whether the federal and state provisions conflict.
 
 
 12
 No circuit court of appeals has yet ruled whether the civil forfeiture statute preempts state homestead protection provisions. See United States v. 1606 Butterfield Rd., 786 F.Supp. 1497, 1503-05 (N.D.Iowa 1991) (holding that Sec. 881(a)(7) preempts Iowa homestead exemption); United States v. 212 Airport Rd. S., 771 F.Supp. 1214, 1215-16 (S.D.Fla.1991) (holding that Sec. 881(a)(7) preempts Florida law at issue here).
 
 
 13
 In Article X, Sec. 4, the Florida Constitution provides that homesteads are exempt from forced sale.[4] The Florida Supreme Court has interpreted this provision to forbid civil or criminal forfeiture of homestead property. See Butterworth v. Caggiano, 605 So.2d 56, 61 (Fla.1992). For its part, Sec. 881(a)(7) provides for forfeiture of real property,[5] and by making no allowances for property protected by state law, we infer that Congress intended Sec. 881(a)(7) to be read broadly. Simply put, Sec. 881(a)(7) states that all real property, without limitation or qualification, is subject to forfeiture.[6] Furthermore, Congress' rationale behind Sec. 881(a)(7) confirms our reading of its plain language. As set forth in legislative history, one purpose of the Comprehensive Crime Control Act of 1984, of which Sec. 881(a)(7) is a part, was
 
 
 14
 to enhance the use of forfeiture ... as a law enforcement tool in combatting ... drug trafficking....
 
 
 15
 This bill is intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies.
 
 
 16
 S.Rep. No. 225, 98th Cong., 2d Sess. 191, 192, reprinted in 1984 U.S.C.C.A.N. 3182, 3374, 3375. Moreover, the legislative history evinces specific intent to extend civil forfeiture to homesteads. See id. at 195, reprinted in 1984 U.S.C.C.A.N. 3378 (civil forfeiture statute extends to "house" of drug offender to be "powerful deterrent" to commission of drug offense). Thus, Sec. 881(a)(7) conflicts with Article X, Sec. 4 of the Florida Constitution.[7] Indeed, to carve out an exception for homestead under federal law would negate the plain meaning of Sec. 881(a)(7) and frustrate its purpose. Cf. United States v. Curtis, 965 F.2d 610, 616-17 (8th Cir.1992) (holding that criminal defendant's property was subject to criminal forfeiture despite state homestead exemption). Consequently, the court properly ruled that Sec. 881(a)(7) preempts the Florida provision, thereby permitting the forfeiture of Claimant's residential property to the United States.[8]
 
 B. Denial of Stay
 
 17
 Claimant also contends that the district court abused its discretion by denying her request for a stay of the forfeiture proceedings on the ground that the government planned to indict her. She contends that a stay would have preserved her right to due process of law and her privilege against selfincrimination.[9] Specifically, Claimant contends that she was faced with a dilemma: remain silent and allow the forfeiture, or testify against the forfeitability of her property and expose herself to incriminating admissions that could be used in a subsequent criminal trial against her. We conclude that sufficient reasons underpinned the court's refusal to stay the civil trial.
 
 
 18
 The privilege against compulsory self-incrimination applies in civil forfeiture proceedings. See 6250 Ledge Rd., 943 F.2d at 729. However, "[a] blanket assertion of the privilege is no defense to the forfeiture proceeding." United States v. $250,000 in United States Currency, 808 F.2d 895, 901 (1st Cir.1987) (citing Little Al, 712 F.2d at 135-36). Accord 566 Hendrickson Blvd., 986 F.2d at 996. Similarly, a blanket assertion of the privilege is an inadequate basis for the issuance of a stay. See 6250 Ledge Rd., 943 F.2d at 729. Rather, a court must stay a civil proceeding pending resolution of a related criminal prosecution only when "special circumstances" so require in the "interests of justice." United States v. Kordel, 397 U.S. 1, 12 & n. 27, 90 S.Ct. 763, 769-70 & n. 27, 25 L.Ed.2d 1 (1970). See Securities & Exch. Comm'n v. Dresser Indus., 628 F.2d 1368, 1375 (D.C.Cir.) (en banc) (stay of civil proceedings pending outcome of criminal proceedings is not constitutionally required), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). The court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant. United States v. Premises Located at Route 13, 946 F.2d 749, 756 (11th Cir.1991). See Little Al, 712 F.2d at 136 ("The very fact of a parallel criminal proceeding, however, d[oes] not alone undercut [a claimant's] privilege against self-incrimination, even though the pendency of the criminal action forced [her] to choose between preserving [her] privilege against self-incrimination and losing the civil suit.").
 
 
 19
 Here, we find no real conflict between the forfeiture and Claimant's Fifth Amendment rights because she has not shown that her invocation of the privilege resulted in the civil forfeiture judgment against her. Once the government met its burden to show probable cause to initiate the forfeiture action, the burden then shifted to Claimant to show by a preponderance of the evidence that the property was not forfeitable. United States v. $121,100.00 in United States Currency, 999 F.2d 1503, 1505 (11th Cir.1993). Claimant, however, stipulated to probable cause and then rested, providing no evidence to support a defense that the forfeiture was improper. Claimant contends that without her own testimony, she could not establish her defense to the forfeiture of her property. We disagree because Claimant provided no explanation as to why she did not use the testimony of other parties to substantiate her defense. See 566 Hendrickson Blvd., 986 F.2d at 996 (citing Little Al, 712 F.2d at 136).
 
 
 20
 Prior to stipulating to probable cause, Claimant put Roosevelt Wims on the witness stand and had plans to call other family members, several of whom were in the courtroom. In particular, Claimant had the option to examine the very persons whose hearsay statements, introduced by Detective Brown and Agent Lee, provided the government probable cause for the forfeiture order. Thus, Claimant's assertion that only her own testimony could vindicate her is groundless; other participants to the illegal acts that gave rise to the forfeiture were available to testify at trial. Claimant's failure to indicate with precision why she did not use other parties' testimony to substantiate her defense was fatal. As a result, Claimant's basis for a stay was nothing more than a blanket assertion of the privilege against self-incrimination, which, as discussed, is an inadequate basis for a stay. See 6250 Ledge Rd., 943 F.2d at 729. Cf. Premises Located at Route 13, 946 F.2d at 756-57 (claimant's failure to present evidence showing how invocation of privilege would result in adverse judgment requires reversal of summary judgment for claimant).[10] In sum, Claimant did not show how she would be prejudiced by the continuation of the forfeiture action while she was a target of a criminal investigation. Accordingly, the court did not abuse its discretion by denying Claimant's motion to stay the forfeiture trial.
 
 III. CONCLUSION
 
 21
 We AFFIRM the district court's forfeiture order.
 
 
 
 *
 Honorable James C. Paine, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Agent Lee testified that Tim Wims, Deon Wims, and Otis Brown provided him the same or similar information given in Detective Brown's testimony
 
 
 [2]
 29 U.S.C.A. Secs. 621-634 (West 1985 & 1993 Supp.)
 
 
 [3]
 "The present case concerns a state constitutional provision through which the people of Missouri establish a qualification for those who sit as their judges. This provision goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity. Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign." Id
 
 
 [4]
 Article X, Sec. 4 of the Florida Constitution provides in pertinent part:
 Homestead--exemptions.
 (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
 (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family[.]
 
 
 [5]
 Section 881(a)(7) of Title 21 provides:
 All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [6]
 If Congress meant to say "all property" with the caveat "and we even mean real property exempt under state homestead protection law," it would have done so. See United States v. Monsanto, 491 U.S. 600, 606-11, 109 S.Ct. 2657, 2661-64, 105 L.Ed.2d 512 (1989) (holding that comparable language of federal criminal forfeiture statute precluded exemption of assets used to pay attorney because "any property" is broad and unambiguous)
 
 
 [7]
 In discussing the "innocent owner" provision of Sec. 881(a)(7), we borrowed Florida law on tenancies by the entirety to define the innocent owner's interests to determine that the property interests of an innocent owner spouse who owned property with her husband as tenants by the entirety could not be defeated by a forfeiture action. 15621 S.W. 209th Ave., 894 F.2d at 1516-18. We concluded that Secs. 881(a)(7) & (h) did not preempt Florida law because "the federal law protects an innocent owner's interest, [whereas] Florida law merely defines the interests of owners of property." Id. at 1518. This case is of a different breed. See United States v. 18755 N. Bay Rd., 13 F.3d 1493, 1498 n. 5 (11th Cir.1994) (distinguishing between definition of property interests and application of state homestead exemption to forfeiture action)
 
 
 [8]
 In so holding, we do not rely upon the preemption provision contained in 21 U.S.C.A. Sec. 903 (West 1981), because the state law at issue here does not enforce criminal drug laws. See United States v. Stazola, 893 F.2d 34, 38 (3d Cir.1990) (holding that "Sec. 903 is directed only to state laws controlling drug abuse and enforcement"). See also Peyote Way Church of God, Inc. v. Thornburgh, 922 F.2d 1210, 1218 (5th Cir.1991) (finding that Sec. 903 relates to states' regulation of drugs); United States v. Jones, 527 F.2d 817, 826 (D.C.Cir.1975) (after reviewing legislative history, concluding that Sec. 903 relates to criminal drug regulation); Luna v. Harris, 666 F.Supp. 33, 36 (E.D.N.Y.1987) (discussing cases holding that Sec. 903 does not preempt state criminal statutes), aff'd, 888 F.2d 949 (2d Cir.1989)
 
 
 [9]
 "No person ... shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law". U.S. Const., amend. V
 
 
 [10]
 Claimant maintains that a "special" circumstance existed because the government advised her during the trial that it intended to indict her on drug charges. This claim is specious as the record demonstrates that Agent Lee informed Claimant's attorney that Claimant was a target in a criminal investigation weeks before the civil trial began