Winsor, J.
After Chad Speegle severely beat Lauren Rhoden, two legal proceedings followed: the State charged Speegle with battery, and Rhoden petitioned for an injunction against dating violence. Speegle pleaded no contest in the criminal case, and the court granted a permanent injunction in the civil case.
After Rhoden petitioned for an injunction, the trial court promptly entered a temporary injunction and scheduled a hearing to consider a permanent injunction. Then, the day before the scheduled hearing, Speegle moved to stay the proceedings until his related criminal case concluded. He argued that defending himself in the injunction case would jeopardize his Fifth Amendment right against self-incrimination. He also argued that a stay would not prejudice Rhoden, because he agreed that the temporary injunction could remain effective in the meantime. The hearing went ahead, and Speegle again moved for a stay. Rhoden objected, and the court denied the motion. After the hearing, during which Rhoden (but not Speegle) testified, the court entered a permanent injunction. Later, Speegle pleaded no contest to the criminal charge and was placed on probation.
Speegle asks us to reverse the permanent injunction, claiming the lower court should have granted a stay. As he did below, Speegle argues that the court was obligated to stay the injunction proceedings to protect his Fifth Amendment right. See § 741.30(5)(c), Fla. Stat. (2016) (providing that a court may grant a continuance *499 of the final injunction hearing "for good cause shown by any party"). More specifically, he argues that he could not effectively defend himself in the injunction proceeding without testifying, and he could not testify without risking self-incrimination.
Although a number of judges faced with Speegle's request might have granted it, we cannot say Speegle's judge abused his wide discretion in doing otherwise. See Everett v. Everett , 196 So.3d 483, 484 (Fla. 1st DCA 2016) (reviewing the lower court's decision on a motion to stay under the "highly deferential" abuse of discretion standard and noting that "the court most familiar with the controversy is in the best posture to determine the appropriateness and conditions of a stay" (citations omitted) ). Speegle essentially asks us to announce a per se rule requiring a stay in civil proceedings when related criminal matters are pending. But there is no such rule. See Urquiza v. Kendall Healthcare Grp., Ltd. , 994 So.2d 476, 478 (Fla. 3d DCA 2008) ("Although under certain circumstances, a trial court may grant a stay in a civil proceeding for a limited time during the pendency of a concurrent criminal proceeding, such a stay is not constitutionally required."); see also United States v. Lot 5, Fox Grove, Alachua County, Fla. , 23 F.3d 359, 364 (11th Cir. 1994) ("[A] court must stay a civil proceeding pending resolution of a related criminal prosecution only when special circumstances so require in the interests of justice .... The court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." (marks and citation omitted) ); United States v. Little Al , 712 F.2d 133, 136 (5th Cir. 1983) ("The very fact of a parallel criminal proceeding ... did not alone undercut [defendant's] privilege against self-incrimination, even though the pendency of the criminal action forced him to choose between preserving his privilege against self-incrimination and losing the civil suit." (marks and citation omitted) ). And although Speegle argues there would be no harm in delay, that is not always the case-and it is not necessarily the case here. Trial judges consider any number of factors in deciding whether to grant a stay: among other things, the availability of witnesses and the fading memories associated with delay.
The trial court had broad discretion in deciding whether to delay Speegle's case, and we cannot conclude that the court abused that discretion.
AFFIRMED .
Wolf and Rowe, JJ., concur.